In the Matter of ROCHESTER GAS AND ELECTRIC CORPORATION, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent; EMPIRE STATE PETROLEUM ASSOCIATION, INC., et al., Intervenors-Respondents. (Proceeding No. 1.)

In the Matter of BROOKLYN UNION GAS COMPANY, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent; EMPIRE STATE PETROLEUM ASSOCIATION, INC., et al., Intervenors-Respondents. (Proceeding No. 2.)

In the Matter of LONG ISLAND LIGHTING COMPANY, Petitioner, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent. (Proceeding No. 3.)

Third Department, December 6, 1979

APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle (Stanley W. Widger, Jr.,* and *Richard N. George* of counsel), for Rochester Gas and Electric Corporation, petitioner.

*Cullen & Dykman (F. Peter O'Hara* and *William R. Coleman* of counsel), for Brooklyn Union Gas Company, petitioner.

*Edward M. Barrett (Edward J. Walsh, Jr.,* and *Richard A. Visconti* of counsel), for Long Island Lighting Company, petitioner.

*Peter H. Schiff (John C. Crary* and *Charles R. Gibson* of counsel), for respondent.

*Keith J. Roland* for intervenors-respondents.

## OPINION OF THE COURT

HERLIHY, J.

At the outset it should be noted that the petitioners in this proceeding do not raise any question as to the validity of the Home Insulation and Energy Conservation Act (Public Service Law, art 7-A; all statutory references hereinafter are to the Public Service Law unless otherwise specified) which became effective in August of 1977 and pursuant to which the determinations complained of herein were made by the Public Service Commission of the State of New York (commission).

In section 1 of chapter 858 of the Laws of 1977, enacting the new article 7-A, the Legislature noted the continuing energy crisis and the following findings were made in subdivisions 8 and 9:

"8. The legislature further finds that energy conservation measures will reduce energy consumption through reduced cooling requirements as well as reduced heating requirements, and for these and other reasons, a program of home energy conservation should be available to all homeowners, regardless of type of fuel or energy used for space or water heating or cooling.

"9. The legislature declares that the common denominator among homes in this state is the receipt of energy from the gas and electric utilities of this state, and that this mechanism should be used for the financing of a home energy conservation program."

The act requires that utilities each adopt and implement a

home conservation plan to be approved by the commission after a hearing. In particular, subdivision 2 of section 135-j provides, in part, that "the commission shall approve, approve with modifications, or reject each such submission [utility plan]." In conformity with the Legislature's findings referred to hereinabove, all "eligible customers" are to be allowed to participate in the plan, and "eligible customers" are defined in subdivision 3 of section 135-b as

"any person who:

"(a) holds legal title to a one, two or three family home constructed prior to the effective date of this article which receives electric or gas service from a utility under residential rate structures approved by the commission, or

"(b) is in rightful possession under a lawful lease of a one, two or three family home constructed prior to the effective date of this article who (i) receives at such home and pays for electric or gas services, from a utility under residential rate schedules approved by the commission, (ii) has the written permission of the holder of legal title to such home to enter into a financing contract and security agreement pursuant to this article, and has the consent of such holder for the financing utility to obtain a security interest in and lien upon the premises, (iii) if the financing utility so requests, provides security of a type and in an amount approved by the commission, and (iv) does not present an undue credit risk as determined in accordance with rules and regulations promulgated for this purpose by the commission."

■ Among other things, the petitioners herein contend that the commission exceeded its powers when it included oil burners in the technical criteria required to be established by section 135-e and in requiring audits as to space heating accomplished by oil. The act specifies in subdivision 4 of section 135-b that "energy conservation measures" include furnace modification such as replacement burners, and subdivision 2 of section 135-c expressly provides: "Participation should be open [in home conservation plans] to all eligible customers, regardless of type of fuel or energy used for space or water heating or cooling." Given such statutory direction, it would have been unusual if the commission had not included oil burners in its criteria. Section 135-f requires energy audits which, pursuant to paragraph (a) of subdivision 2, must include "estimates of the energy conservation measures, if any, needed to comply with the applicable minimum criteria".

Accordingly, the contention that oil burners are statutorily excluded from the act must be rejected as being without substance.

The further suggestion of the petitioners that, if a utility wishes, it may limit its plan by not offering any relief as to oil burners pursuant to the provisions of subdivision 3 of section 135-d would nullify the generic references to "replacement burners" in subdivision 4 of section 135-b and is contrary to the broad powers given the commission in regard to minimum criteria and approval of plans as discussed hereinabove. As noted in the case of *Matter of City of New York v State of New York Comm. on Cable Tel.* (47 NY2d 89, 93), "[i]n view of this unequivocal declaration of legislative intent, petitioner's contentions simply cannot withstand analysis." The commission did not exceed its powers by requiring that utilities participate in audits as to oil space heating and/or in plans including replacement oil burners.

Since it appears that the commission's interpretation of the act as including oil burners is in agreement with the requirements of the act and the petitioners do not question the validity of the act itself, the incidental arguments that the interpretation by the commission results in an unconstitutional alteration of the corporate certificate of incorporation; that financing oil burners denies those ratepayers who heat with gas and electricity due process of law; that the order constitutes a taking of the utilities' property without just compensation; and, that the orders will raise antitrust consequences for the utilities as to the oil heating industry (except as to oil burner audits by oil dealers) must be rejected. Moreover, the record does not establish that the orders would otherwise be invalid based upon such arguments.

■ The contention that the maximum financing rate is so inadequate as to be confiscatory is not established factually upon the present record. In any event, the utility does not show any likely taking of its property in view of the mandatory requirement of section 135-n that: "A utility shall be allowed to recover as normal operating expenses through rates the just and reasonable costs of carrying out its responsibilities and home conservation plan under this article, as determined by the commission after public hearing upon reasonable notice."

■ The petitioner Brooklyn Union Gas Co. submits what at first blush is a unique and persuasive argument that the

approved plan denies equal protection of the law by not providing for replacement of gas burners in view of its status as a supplier only of gas. However, the record reveals that the proceedings did not present enough in the way of factual data to propose criteria for such conservation measures, and the matter is still one which may be pursued by the petitioners before the commission. Accordingly, upon the present record, the denial of equal protection of the law is not established.

The petitioners contend that the commission did not in all respects hold the hearings required by subdivision 1 of section 135-c and subdivision 1 of section 135-e. The pertinent part of section 135-c is as follows: "After hearing upon reasonable notice, the commission shall establish home conservation plans for each utility in accordance with the provisions of this article." The pertinent part of section 135-e is as follows: "The commission shall establish criteria for each energy conservation measure not later than sixty days after the effective date hereof, after a public hearing upon notice, and after consultation with the New York State Energy Office and the New York State Building Code Council."

As to all matters requiring factual determination and as to the plans and criteria in general, the required hearings were held. As submitted by the commission in its brief herein, the so-called amendments to the criteria and plans were not new matters, but were in the nature of refinement or clarification of the original proposals. Accordingly, the notice and comment procedure utilized by the commission was appropriate and further hearings were not required. We note the further assertion of petitioners that section 202 of the State Administrative Code as to hearings was also violated; however, that section provides for procedure and does not establish any independent basis for holding hearings.

The petitioners raise issues as to whether or not various determinations are supported by substantial evidence. At this point there is no lack of substantial evidence and, in particular, the feasibility of oil burner replacement and the adoption of an 80% efficiency of oil burners after modification, as well as the requirement for the cleaning of oil burners, are supported by substantial evidence. The remaining issues of substantial evidence not specifically mentioned relate to the requirement of co-operating with oil dealers and/or audits and auditors wherein oil dealers participate directly or indirectly and such issues are treated below.

█ It is alleged that the commission has acted unreasonably in requiring financing or loan guarantees without regard to the credit risk of the applicant. While the suggestion that "anyone" regardless of credit worthiness must be given financing seems contrary to all business expectations, in the context of the act such a result is not so shocking. The act defines an "eligible customer" as set forth hereinabove and it is quite apparent that as to tenants who qualify, the utility is expected to have both security and a lien on the premises. Pursuant to subdivision 2 of section 135-d and subdivision 1 of section 135-g the utility and/or lending institution (§ 135-*l)* are to be secured by a security agreement. Further, it is obvious that any applicant for financing must already be a customer of the utility and in that respect credit is already established with the utility. In any event, the act does not require that participating customers be good credit risks if they are homeowners, and the distinction by the Legislature between tenants and homeowners supports the reasonableness of the determination of the commission that a credit test was not required of homeowners. An announced aim of the act is to assist homeowners by providing financing, and the interpretation by the commission that credit worthiness was not to be considered is consistent with that purpose and the exigent circumstances for which it was intended.

However, the petitioners have established error on the part of the commission in the following matters.

The commission, in various parts of its orders, has relied upon oil heating associations and on oil dealers to participate in the program. The act has no provision which would reasonably support such ordered inclusion by the commission. The commission has no general jurisdiction over oil companies under the Public Service Law ·and there is no direct or indirect jurisdiction acquired by it in the subject act. In particular, the order has directed that oil heating associations would establish the program for qualifying auditors to inspect oil burners "subject to the commission's approval"; the utilities are given the responsibility to contact oil dealers to participate in the program; and oil dealers are to perform oil burner audits. For those items, the commission contends that its use and/or reference to oil dealers is within the over-all framework of carrying out the act.

█ The participation of the oil associations in regard to setting qualifications for auditors of oil burning equipment is

permissible only to the extent of providing evidence of technical skills necessary to conduct an audit. The statutory scheme is dependent upon qualifications being established and the commission certainly has the power to set such qualifications. To the extent that oil associations are given any larger role than submitting evidence of proposed qualifications and training programs or that utilities are required to co-operate or collaborate with such associations, the orders exceed the jurisdiction of the commmission. Oil dealers, of course, may voluntarily participate in the program to the same extent as other contractors by performing services at the request of an eligible customer, such as energy audits and installation, if they meet the same requirements imposed on other contractors (see *Matter of Brooklyn Union Gas Co. v Public Serv. Comm. of State of N. Y.,* 71 AD2d 171).

■ The orders herein prohibit the utilities from promoting a conversion from oil to gas or electric heat as a part of performing an energy audit. Upon the present record, it is doubtful that such a ban would be sustainable as a reasonable infringement on the commercial speech rights of the utilities; however, it is unnecessary to reach that issue. The act specifies in paragraph (b) of subdivision 2 of section 135-f that utility performed audits include "estimates of available options" and to the extent that gas or electric heat would be an available option to meet minimum criteria, the ban is unreasonable and contrary to the directives of the act.

In our present economic and energy crisis, it should be noted that since the commission's determination both Federal and State Governments have stressed the necessity of finding ways and means to conserve oil. (Cf. *Matter of Consolidated Edison of N. Y. v Public Serv. Comm. of State of N. Y.,* 47 NY2d 94, 110.)

The remaining issues raised herein are disposed of in the companion case of *Matter of Brooklyn Union Gas Co. v Public Serv. Comm. of State of N. Y. (supra).*

The determinations should be modified by annulling so much thereof as (1) requires participating oil dealers to perform energy audits; (2) requires the oil heating associations to establish a program for the training of auditors; (3) prohibits an audit from initially including the consideration of converting from oil to gas or electric heat; (4) permits a payback period exceeding seven years to qualify for financing; (5) permits an eligible customer to choose a contractor not listed

with the utility to perform installation services; and, as so modified, confirmed, without costs.

SWEENEY, J. P., KANE, STALEY, JR., and MIKOLL, JJ., concur.

Determinations modified by annulling so much thereof as (1) requires participating oil dealers to perform energy audits; (2) requires the oil heating associations to establish a program for the training of auditors; (3) prohibits an audit from initially including the consideration for converting from oil to gas or electric heat; (4) permits a payback period exceeding seven years to qualify for financing; (5) permits an eligible customer to choose a contractor not listed with the utility to perform installation services, and, as so modified, confirmed, without costs.