OPINION OF THE COURT
Per Curiam.
The determination of respondent Public Service Commission (PSC) — that when petitioner utilities enclose political messages with billing statements their shareholders must pay 50% of fixed costs associated with preparing and mailing those statements to ratepayers — does not violate the utilities’ right of free speech under the Federal Constitution.
In Consolidated Edison Co. v Public Serv. Commn. (447 US 530), the Supreme Court struck down a prior PSC determination prohibiting utilities from including bill inserts that expressed views on controversial public policy issues as violative of the utilities’ right of free speech under the 1st Amendment (US Const 1st Amend). The court, however, specifically left open the question whether the PSC could constitutionally allocate, between shareholders and ratepayers, the costs of bill inserts addressing controversial issues of public policy (447 US, at p 543, n 13; see also, id., at p 544 [Marshall, J., concurring]).
Following the court’s decision, the PSC instituted proceedings and invited comments regarding possible other action with respect to bill inserts. On March 23, 1983, the PSC issued an order providing that, if utilities enclosed inserts concerning matters defined in Account 426.4* with billing statements, *372 50% of many fixed costs associated with preparation and mailing of those statements would be allocated to the utilities’ shareholders. In arriving at this decision, the PSC concluded that otherwise the ratepayers would in effect be subsidizing utility management: "[In 1977] we concluded that utility management receives a subsidy for the dissemination of its views when it uses the billing process to send political messages to ratepayers. Nothing has happened since that time to persuade us that our finding is incorrect. In the extensive litigation following our 1977 Statement of Policy no party has contended that a utility does not derive an economic benefit by using the billing process (whose costs are paid for by ratepayers) as opposed to alternative means to disseminate political messages. We therefore continue to conclude that using the billing process provides a subsidy to utility management.”
One of the PSC’s duties is to insure that the public receives utility services at charges that are "just and reasonable” (Public Service Law § 65 [1]). In setting rates, "a prime function of the commission, as a regulatory body, is to separate those costs which should be borne by ratepayers from those which are properly chargeable to shareholders.” (Rochester Gas & Elec. Corp. v Public Serv. Commn., 51 NY2d 823, 825, appeal dismissed 450 US 961.) In Rochester Gas we held that the PSC did not violate the utility’s 1st Amendment rights by refusing to include a portion of the utility’s informational advertising, which the PSC found was unnecessary to the furnishing of utility services, as an allowable expense; the Constitution does not require the PSC "to allow the utility to charge ratepayers for all communications which the utility may choose to make” (51 NY2d, at p 825).
Rochester Gas is controlling here. Although this case involves the allocation of fixed rather than marginal costs, the principle is the same: nothing in the Constitution requires that the shareholders get a free ride on the backs of the ratepayers.
Petitioner claims that respondent’s ruling is invalid because Account 426.4 is impermissibly based on the content of speech. *373 In fact, however, the thrust of the regulation is to distinguish between expenditures that primarily advance the interests of the corporation (properly chargeable to the shareholders) and expenditures that primarily advance the interests of the ratepayers (properly chargeable to them) (cf. 16 NYCRR 136.80, 143.9). In making this distinction, the PSC was therefore only implementing its statutory and regulatory mandate, and the case is indistinguishable from Rochester Gas, in which the PSC allocated expenses based on its determination whether the advertising was "unnecessary to the furnishing of utility services” (51 NY2d, at p 825); see also, Southwestern Elec. Power Co. v Federal Power Commn. (304 F2d 29, 47, cert denied sub nom. Alabama Power Co. v Federal Power Commn. 371 US 924).
Finally, PSC’s ruling also represented a proper attempt to balance competing 1st Amendment interests of the shareholders and the ratepayers. If costs were not allocated the ratepayers might have cause to complain that they were being compelled to subsidize and support the speech of the utilities in violation of the rule of Abood v Detroit Bd. of Educ. (431 US 209) and Wooley v Maynard (430 US 705). (See, Consolidated Edison Co. v Public Serv. Commn., 447 US, at p 543, n 13, supra; id., at p 544 [Marshall, J., concurring]; id., at p 549 [Blackmun and Rehnquist, JJ., dissenting].) As the dissenting Justices noted in Consolidated Edison, "[e]yen though the free ride may cost the ratepayers nothing additional by way of specific dollars, it still qualifies as forced support of the utility’s speech” (447 US, at p 552).
In these circumstances, the 50-50 division of costs made by the PSC was reasonable and within its discretion.
Accordingly, the order of the Appellate Division should be affirmed, with costs.
Chief Judge Wachtler and Judges Jasen, Meyer, Simons, Kaye, Alexander and Titone concur in Per Curiam opinion.
Order affirmed, with costs.

 Account 426.4, 16 NYCRR, ch II, subch F (Account 323.1 for telephone utilities) provides:
"Expenditures for Certain Civic, Political and Related Activities.
"This account shall include expenditures for the purpose of influencing public opinion with respect to the election or appointment of public officials, referenda, legislation, or ordinances (either with respect to the possible adoption of new referenda, legislation or ordinances or repeal or modification of existing referenda, legislation or ordinances) or approval, modifica *372 tian or revocation of franchises; or for the purpose of influencing the decisions of public officials or advancing the political objective of the utility, but shall not include such expenditures which are directly related to appearances before regulatory or other governmental bodies in connection with the reporting utility’s existing or proposed operations.”