OPINION OF THE COURT
Simons, J.
Plaintiff Rochester Gas & Electric Corporation (RG&E) challenges the constitutionality of Public Service Law § 66-d (2) (L 1984, ch 519, § 2, as amended by L 1985, ch 790, § 2), as applied to it by Opinion No. 85-6 of defendant Public Service Commission (PSC). The statute authorizes the PSC to require certain utilities to transport nonowned natural gas through their pipelines if the utility has excess capacity, receives reasonable compensation for doing so and if transportation of the nonowned gas will not burden the utility or its ratepayers or impair the over-all quality of service to customers. Plaintiff is a utility selling gas to customers in Rochester and seven surrounding counties and. it contends that the statute and implementing order contained in Opinion No. 85-6 violate its due process rights and effect an unconstitutional taking of its property (see, US Const 5th and 14th Amends; NY Const, art I, §§ 6, 7). The courts below upheld the statute and the opinion finding that they were a valid exercise of the State’s police power and did not result in an impermissible taking of plaintiff’s property. The appeal is before us as of right (see, CPLR 5601 [b] [1]) and we now affirm.
I
Section 66-d (2) was designed to stimulate production of natural gas indigenous to New York State thereby benefiting local producers, diversifying the State’s energy supplies and increasing competition within the natural gas industry by providing an economical means for local gas to be marketed *318 (see generally, Public Service Law § 66-d, Legislative Findings, L 1984, ch 519, McKinney’s Cons Laws of NY, Book 47, 1988 Cum Ann Pocket Part, at 101-102; Mem of State Executive Department, 1984 McKinney’s Session Laws of NY, at 3336-3337). It was a legislative response to the Commission’s finding that significant quantities of New York natural gas, which is less expensive than gas transported from other areas of the country, remained untapped because local producers were unable to transport their fuel to potential customers. Local producers had little bargaining power compared to the large interstate suppliers and these out-of-State suppliers used their leverage to negotiate long-term "take-or-pay” agreements with many utilities requiring that the utilities pay for fixed quantities of gas whether or not they take the bargained-for amount. As a result, the utilities tended to rely exclusively on their interstate suppliers in order to avoid paying for gas never received (id.; see generally, Roland, Take or Pay Provisions: Major Problems for the Natural Gas Industry, 18 St Mary’s LJ 251 [1986]). Local producers, denied the means of transportation, were "shutin”, unable to sell their gas to the utilities or deliver it to customers.
To ameliorate this problem, the Legislature amended the Public Service Law to authorize the Public Service Commission to require gas utilities having excess capacity to transport gas directly from local producers to consumers throughout the utility’s pipelines. In essence, the legislation allowed consumers to purchase gas still in the ground and compelled utilities to transport it to them. Unlike the typical transaction — in which the utility bought gas from the producer, and then transported and sold it to the customer — the new legislation required the utility to transport to the consumer gas it already owned if the consumer paid for the use of the utility’s pipelines.
The Legislature first attempted to open markets for local gas producers in 1983 when it enacted Public Service Law § 66 (12-b) (b) (L 1983, ch 626). This subdivision authorized utilities, with PSC approval, to contract with consumers to transport from producers gas already purchased by the customer.[1] How *319 ever, this enactment only opened markets to local producers if a utility was willing to enter into a transportation contract with its customer. Seeking to provide further benefits to local producers, the Commission considered mandating that utilities transport customer-owned gas and solicited comments on the issue. In 1984, while those proceedings were pending, the Legislature enacted Public Service Law § 66-d (2) authorizing the PSC to order gas utilities to transport New York customer-owned gas under stated circumstances. As originally enacted, Public Service Law § 66-d (2) only authorized participation by consumers who used large quantities of gas (at least 25,000 decatherms yearly). The statute was amended in 1985, however, to require utilities to ship customer-owned gas to all consumers, regardless of the customer’s yearly gas consumption. Public Service Commission Opinion No. 85-6, also challenged by plaintiff, was adopted pursuant to section 66-d (2)* [2] and ordered plaintiff to file a tariff establishing rates for transportation of nonowned gas.
Plaintiff thereafter commenced this action contending that Public Service Law § 66-d (2) and PSC Opinion No. 85-6 are unconstitutional because they: (1) substantially interfere with plaintiff’s right to conduct its business, in violation of its substantive due process rights; and (2) force plaintiff to provide public access to its property, resulting in a taking without "just compensation”. The substance of its claim, under both theories, is that the statute and the opinion require it to engage in a business it is not authorized to engage in and to use its property in a way it has neither agreed nor desires to use it.
II
Analysis starts by recognizing that legislative enactments are presumed valid and that one who challenges a statute *320 bears the burden of proving the legislation unconstitutional beyond a reasonable doubt (see, 41 Kew Gardens Rd. Assocs. v Tyburski, 70 NY2d 325, 333; Trump v Chu, 65 NY2d 20, 25, appeal dismissed 474 US 915; Maresca v Cuomo, 64 NY2d 242, 250-251, appeal dismissed 474 US 802). Additionally, this action involves economic legislation and modern substantive due process principles require that the judiciary give great deference to the Legislature in that area (Exxon Corp. v Governor of Md., 437 US 117, 124, reh denied sub nom. Shell Oil Co. v Governor of Md., 439 US 884; Ferguson v Skrupa, 372 US 726, 731; see also, Montgomery v Daniels, 38 NY2d 41, 67). When reviewing such legislation the courts may not concern themselves with its ultimate wisdom; the legislation must be sustained if it has any reasonable relation to the State’s legitimate interests (see, Exxon Corp. v Governor of Md., supra).
A
Plaintiff claims first that section 66-d (2) has fundamentally changed the nature of its business and compels it to use its distribution system to operate in ways contrary to the provisions of the Transportation Corporations Law, under which it was incorporated, and its franchises. It contends that RG&E was chartered as a "gas corporation” (see, Transportation Corporations Law § 10), not as a "pipeline corporation” (see, Transportation Corporations Law § 80) and it maintains that as such it is only obliged to transport and sell its own gas. It asserts that only pipeline corporations are obliged to carry gas on behalf of third parties and that the statute by imposing duties upon it not reflected in its certificate of incorporation, forces it to provide services it is not authorized to perform.
The short answer, of course, is that the Legislature has defined the powers of corporations and it can redefine them by statutory amendment to promote the public interest. But more to the point, plaintiff is not being compelled to offer service greater or different than authorized by its original charter. Gas corporations are charged with the duty of supplying gas for public use (see, Transportation Corporations Law § 10; see also, Public Service Law § 65) and none of the statutes regulating plaintiff indicate that duty is to be fulfilled only by selling its own gas (see, e.g., Public Service Law § 2 [10], [11]; §§ 64, 65). The transportation of customer-owned gas also results in gas being supplied to members of the public *321 and is thus consistent with the general duties imposed upon gas corporations. The statute may force plaintiff to do something which, as a matter of form, differs from what it has customarily done because it no longer has title to all the gas in its pipelines. The substance of the transactions is the same, however; the company provides gas to the community, something it has always done and is obliged to do.
Plaintiff also contends that its franchises limit it to transporting its own gas. It appears, however, that of plaintiff’s more than 60 franchises only one arguably provides that plaintiff shall deliver company-owned gas. But whether the franchises specify the gas is to be owned by the franchisee or not, their terms may not be used to limit the State’s lawful exercise of its police powers (see, Puget Sound Traction Co. v Reynolds, 244 US 574, 578-579; American Rapid Tel. Co. v Hess, 125 NY 641; cf., Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn., 71 AD2d 185, 190, appeal dismissed 49 NY2d 1014). They are no more than commitments by various local governments to plaintiff to use public property in exchange for supplying a public service and the State may revoke or modify them to impose new service obligations on the franchisee to promote the public good (American Rapid Tel. Co. v Hess, supra, at 645).
Accordingly, there is nothing in the Transportation Corporations Law or plaintiff’s franchises which inhibit defendant from implementing the statute or enforcing its order. To the extent Public Service Law § 66-d (2) may compel RG&E to provide a service it did not anticipate and does not want to provide, the statute must be examined under traditional due process principles.
Under our form of government the use of property and the making of contracts are normally matters of private, not public, concern. Neither property rights nor contract rights are absolute, however, for government could not exist if a citizen had the unfettered right to use property to the detriment of others, or exercise his freedom of contract to work them harm. Thus, equally fundamental with the private right is the right of the public to regulate it in the common interest through the exercise of a police power to promote the general welfare. The Federal and State Due Process Clauses condition government regulation by requiring that it not be unreasonable, arbitrary or capricious, and that the means selected have a reasonable relation to the object sought to be attained.
*322 More particularly, the Constitution does not guarantee citizens the unrestricted privilege of conducting or engaging in business as they please. The State may, in the reasonable exercise of its police power, condition or restrict private businesses or prohibit the operation of some businesses entirely to further its policies (Nebbia v New York, 291 US 502, 527-528; see also, New York State Thruway Auth. v Ashley Motor Ct., 10 NY2d 151, remittitur amended 10 NY2d 814). Plaintiff, moreover, is not an ordinary corporation — it is a public utility. It operates pursuant to government license and with the advantage of municipally awarded franchises and it has thus become "clothed with a public interest” (see, Munn v Illinois, 94 US 113, 126; People ex rel. Delaware & Hudson Co. v Stevens, 197 NY 1, 9; see also, Wolff Co. v Industrial Ct., 262 US 522, 535-536). As a consequence, it is "under an obligation to discharge duties which affect the community at large [and] the legislature may [amend such duties] in furtherance of the public interest” (New York Cent. & Hudson Riv. R. R. Co. v Williams, 199 NY 108, 117, affd sub nom. Erie R. R. Co. v Williams, 233 US 685; see also, American Rapid Tel. Co. v Hess, 125 NY 641, 645, supra).
Public Service Law § 66-d (2) does no more than compel the utility to provide access to its pipelines to New York State gas producers on occasions when it will not be burdensome to the utility or its remaining customers and upon payment of reasonable compensation. It is a reasonable regulation consistent with the public interest in developing the State’s resources, furthering competition and controlling the cost of natural gas in the retail market (cf., Federal Energy Regulatory Commn. v Mississippi, 456 US 742; Matter of Consolidated Edison Co. v Public Serv. Commn., 63 NY2d 424, 431). Accordingly, the Legislature acted well within constitutional limitations when it modified the manner in which plaintiff was required to satisfy its public obligations declaring that the public must be afforded reasonable access to the utility’s pipeline network in the manner specified (cf., American Paper Inst. v American Elec. Power, 461 US 402 [sustaining Federal legislative and agency action requiring interconnection between electric utilities and private cogeneration facilities to encourage power production]; accord, Matter of Consolidated Edison Co. v Public Serv. Commn., 63 NY2d 424, appeal dismissed 470 US 1075, supra; Kansas City Power & Light Co. v State Corp. Commn., 238 Kan 842, 715 P2d 19).
*323 B
RG&E supports its claim that Public Service Law § 66-d (2) forces it to operate its business in ways it does not choose to operate by contending that the statute changes its status from a private carrier to a common carrier. It cites in support of its position a line of United States Supreme Court cases (see, Smith v Cahoon, 283 US 553; Frost Trucking Co. v Railroad Commn., 271 US 583; Michigan Commn. v Duke, 266 US 570; and Producers Transp. Co. v Railroad Commn., 251 US 228), and a decision from this court relying upon those Supreme Court authorities (Matter of Motor Haulage Co. v Maltbie, 293 NY 338).
These carrier cases are no longer controlling. They were decided during the Lochner era (see, Lochner v New York, 198 US 45) in which the Supreme Court used the substantive due process doctrine to void economic or social legislation aimed at private companies, deemed at the time not to be affected with a public interest, which the court believed unreasonably infringed upon the liberty to contract (2 Rotunda, Nowak and Young, Constitutional Law, Substance and Procedure § 15.3, at 41 [1986]; see, e.g., Lochner v New York, supra [invalidating legislation limiting the number of hours employees could work per week]; see also, Tribe, American Constitutional Law § 8-4, at 570-574 [2d ed 1988]). That theory of substantive due process was "relegated to obscurity in Nebbia v New York (291 US 502)” (Montgomery v Daniels, 38 NY2d 41, 67, supra; see also, West Coast Hotel Co. v Parrish, 300 US 379; 2 Rotunda, Nowak and Young, op. cit., § 15.3, at 48-49; Tribe, op. cit., § 8-7, at 581-586). After Nebbia, even private corporations may be deemed affected with a public interest and subjected to reasonable regulation under the State’s police power.
Thus, plaintiff’s status as public or private carrier is largely irrelevant under modern substantive due process rules. The inquiry is not whether the statute alters plaintiff’s business or interferes with its management prerogatives — all economic regulations have that effect, the dispositive question is whether the governmental exercise of its police powers is reasonable. We find that it is.
Nevertheless, even under the rationale of plaintiff’s authorities — including this court’s decision in Matter of Motor Haulage Co. v Maltbie (293 NY 338, supra) — section 66-d (2) would be valid because those cases involved private corporations and, in deciding them, the courts emphasized that public duties *324 should only be borne by corporations affected with a public interest. Plaintiff is a public utility affected with such an interest and under either old or current notions of substantive due process public duties manifestly can be imposed on it.
m
Plaintiff further contends that Public Service Law § 66-d (2) effects an unconstitutional taking of its property without just compensation (US Const 5th and 14th Amends; NY Const, art I, § 7; see also, 2 Rotunda, Nowak and Young, Constitutional Law, Substance and Procedure § 15.6, at 76-77). While it is clear that government regulation may permissibly effect economic interests or expectations, if the regulation goes too far the government’s action will be treated as a public taking for which just compensation is required (see generally, Pennsylvania Coal Co. v Mahon, 260 US 393, 415; de St. Aubin v Flacke, 68 NY2d 66, 76-77; French Investing Co. v City of New York, 39 NY2d 587, 593-595, appeal dismissed and cert denied 429 US 990). Governmental action short of acquisition or occupation will result in a taking if the effects of the action are so complete as to deprive the owner of all or most of its interest in the property (United States v General Motors Corp., 323 US 373, 378).
The determination of whether the government’s action constitutes a taking inevitably requires an ad hoc factual inquiry but the Supreme Court formalized some factors which may be considered to resolve that question in Connolly v Pension Benefit Guar. Corp. (475 US 211). It found three of "particular significance”: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action (id., at 225; see also, Penn Cent. Transp. Co. v New York City, 438 US 104, 123-128, reh denied 439 US 883). Applying those considerations, we find that Public Service Law § 66-d (2) and PSC Opinion No. 85-6 do not result in a "taking” of plaintiff’s property.
First, there appears to be little economic impact on plaintiff. The statute requires a utility to transport nonowned gas only when it has excess capacity, the customer pays for the service and if access does not overly burden the utility or the utility’s customers, by requiring higher rates, for example.
Next, it does not appear that the State’s action had any *325 adverse affect on plaintiff’s investment-backed expectations (see, Ruckelshaus v Monsanto Co., 467 US 986, 1005-1014). Indeed, plaintiff has not attempted to prove that it would. Plaintiff undertook its business and developed its plant with the knowledge that it was a public utility. Thus, its general investment expectations included the knowledge that it was subject to extensive regulation. The current statutory scheme cannot have frustrated its reasonable expectations. Plaintiff continues its business as before subject only to transporting obligations to third parties for a fee if its pipelines are available.
Third, the government’s action involves only minimal, intermittent access to plaintiff’s pipelines, under circumstances which will not interfere with plaintiff’s regular business. No permanent appropriation of plaintiff’s property rights is involved (cf., Loretto v Teleprompter Manhattan CATV Corp., 458 US 419; Kaiser Aetna v United States, 444 US 164).
Conceivably, plaintiff’s sales may decline if consumers are enabled to buy their own gas from producers. Plaintiff has no vested right to sell gas to specific customers, however, and in any event it will receive reasonable compensation, in the form of transportation charges, from those to whom it formerly sold fuel. Moreover, as a regulated utility, it is protected by its continuing right to charge rates which permit a reasonable return on investment (see, Public Service Law § 72; Matter of Niagara Mohawk Power Corp. v Public Serv. Commn., 69 NY2d 365, 369). Thus, the interference with plaintiff’s property is minimal. As Justice Holmes stated when faced with a similar issue in The Pipe Line Cases (234 US 548, 561): "the statute practically means no more than they must give up on requiring a sale to themselves before carrying the [gas] that they now receive. The whole case is that [plaintiff] if [it] carr[ies] must do it in a way [it does] not like. There is no taking” (see also, Kansas City Power & Light Co. v State Corp. Commn., 238 Kan 842, 715 P2d 19, supra [finding legislation mandating that electric utilities interconnect their facilities with those of private cogenerators did not effect a taking]).
Finally, plaintiff contends its property has been taken because even though it has not been deprived of its use plaintiff has been forced to undertake a new venture. The argument essentially restates contentions raised in support of plaintiff’s substantive due process claim but in this branch of its appeal plaintiff relies upon Matter of Utica Tr. Corp. v *326 Feinberg (277 App Div 464). In Utica Tr., the court recognized the general rule that governmental regulation forcing a carrier to extend its operation into previously unserviced area, beyond its commitment, is a taking. Nevertheless, the court upheld a Commission order which required the carrier to extend its bus service within its service area, finding that requiring a new service under those circumstances did not result in a taking (see also, Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn., 71 AD2d 185, 190, supra). Our decision here is consistent with that holding. Public Service Law § 66-d (2) and PSC Opinion No. 85-6 provide that in some cases, instead of purchasing gas, transporting it and then selling it, the utility will only transport the fuel. As in Matter of Utica Tr., the company is not being forced to provide services beyond its original commitment. It is being required to make some of the services it has always provided, transportation of gas, available to others.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Wachtler and Judges Kaye, Alexander, Ti-tone, Hancock, Jr., and Bellacosa concur.
Order affirmed, with costs.

. Public Service Law § 66 (12-b) (b) provides: "The commission may also authorize utility corporations to contract with existing or prospective industrial and commercial customers to wheel or deliver electricity or gas purchased directly by such customers, provided that the commission finds that such arrangements are in the overall best interest of the rate payers of *319 the corporation, and that the rates and fees for the services provided adequately compensate the corporation for the use of its facilities.”

. Public Service Law § 66-d (2) presently reads as follows: "The commission, upon its own initiative or upon application by a natural gas producer or a consumer of natural gas in any year and after notice and hearing shall, upon such terms and subject to such conditions as the commission considers just and reasonable, have the authority, to order any gas corporation to transport or contract with others to transport gas under contract for sale by such producer or owned by such consumer provided that, the commission finds that the gas corporation has available capacity, that no undue burden shall be placed upon the gas corporation or its ratepayers and that the ability of the gas corporation to render adequate service to its customers is not impaired.”