In the Matter of ROBERT ABRAMS, as Attorney-General of the State of New York, Appellant, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, March 24, 1988

## APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (K. Wade Eaton, John W. Corwin, Eugene Welch, Nancy A. Spiegel* and *Richard W. Golden* of counsel), appellant *pro se.*

*Robert A. Simpson (Marilyn Mann Faulkner* of counsel), for Public Service Commission of the State of New York, respondent.

*Nixon, Hargrave, Devans & Doyle (Ernest J. Ierardi, Scott M. Turner* and *Jeffrey R. Clark* of counsel), for Rochester Gas & Electric Corporation, respondent.

## OPINION OF THE COURT

LEVINE, J.

The instant appeal involves a second aspect of the determination by respondent Public Service Commission (hereinafter the PSC) concerning the recovery by respondent Rochester Gas & Electric Corporation (hereinafter RG&E) through increased rates to its customers of costs arising out of a shutdown of RG&E's Ginna Nuclear Power Plant in Wayne County, a portion of which determination was previously before us *(see, Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 117 AD2d 156). As described in that decision, the Ginna plant was forced to shut down in January 1982 for 149 days as a result of a rupture of a high pressure tube carrying heated radioactive water. Because of the shutdown, RG&E incurred two types of increased costs: (1) $2.5 million for repairs of the damage to its equipment arising out of the rupture, and (2) $10.2 million to $14.1 million for the purchase of electricity from alternative energy sources to supply power to its customers while the Ginna plant was out of service. In a single proceeding involving both classes of costs, the PSC found that the sole cause of the rupture was the negligence of one of RG&E's employees in failing to remove one of multiple 3½-pound sections of steel rings from the Ginna plant's steam generators as part of a repair operation in 1975. The PSC determined that the negligence of the employee could be imputed to RG&E on the issue of whether the costs of repair, a "non-energy outage-related expense", was imprudently incurred, and hence, not recoverable through an increase in

rates, even though RG&E was found to have acted prudently in all other respects. This determination was upheld in *Matter of Rochester Gas & Elec. Corp. v Public Serv. Commn. (supra)*. The PSC, however, declined to order a refund of RG&E's increase in rates for its expense of purchasing alternative power during the shutdown, which rate increase RG&E put into effect through the automatic fuel adjustment clause in its tariff *(see,* Public Service Law § 66 [12]). Petitioner brought this CPLR article 78 proceeding to challenge the latter determination and appeals from Supreme Court's dismissal of the petition.

There should be an affirmance. Petitioner's argument is essentially that, once the PSC determined that the cause of the rupture and resultant shutdown of the Ginna plant was the imprudence of an RG&E employee, the PSC has no discretion but to disallow recovery of any and all costs arising therefrom through increased rates. Conceding that the PSC under the statutory scheme *(see,* Public Service Law art 4) generally has discretion to determine the just and reasonable rates of an electric utility, petitioner claims that no such discretion exists here because of the blanket statutory prohibition against "unjust or unreasonable charge[s]" contained in Public Service Law § 65 (1). According to petitioner, that prohibition is one of several contained in Public Service Law § 65 *(see, e.g.,* a similar statutory ban on special rates and kickbacks [Public Service Law § 65 (2)] and against preferential treatment [Public Service Law § 65 (3)]), all of which are exceptions to the PSC's discretionary authority in setting rates. Therefore, petitioner contends, since the PSC found that RG&E was imprudent in causing the Ginna plant shutdown, it necessarily follows that *all* costs arising therefrom are unreasonable and must be disallowed.

We disagree. First, the sentence in Public Service Law § 65 (1) that petitioner relies upon cannot be read in isolation but must be interpreted in the context of the entire statutory scheme of rate setting. Under that scheme, the PSC is to determine "just and reasonable" charges of a utility (Public Service Law § 65 [1]) and to consider all factors "which in its judgment have any bearing" on determining "just and reasonable prices, rates and charges" as to utility costs and "a reasonable average return upon capital actually expended" (Public Service Law § 72; *see, Matter of Abrams v Public Serv. Commn.,* 67 NY2d 205, 212). In a series of recent decisions construing various sections of Public Service Law article 4, it

has repeatedly been held that the PSC has broad power and indeed the primary function (in determining just and reasonable rates and charges, including the cost recovery element thereof) " 'to separate those costs which should be borne by ratepayers from those which are properly chargeable to shareholders' " *(Matter of Consolidated Edison Co. v Public Serv. Commn.,* 66 NY2d 369, 372, *appeal dismissed* 475 US 1114, quoting *Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 51 NY2d 823, 825, *appeal dismissed* 450 US 961 [construing Public Service Law § 65 (1)]; *see, Matter of Niagara Mohawk Power Corp. v Public Serv. Commn.,* 69 NY2d 365, 372-373 [construing Public Service Law § 66 (former [12])]; *Matter of Abrams v Public Serv. Commn., supra* [construing Public Service Law § 72]; *Matter of New York State Council of Retail Merchants v Public Serv. Commn.,* 45 NY2d 661, 669-670 [construing Public Service Law § 65 (2), (3)]). In all of the foregoing decisions, the Court of Appeals has reiterated the narrow limit of judicial review as to the PSC's allocation of costs between a utility's ratepayers and shareholders, namely, whether the determination was rational and had any reasonable support in the record *(see, e.g., Matter of Abrams v Public Serv. Commn., supra,* at 218). Moreover, the PSC is not required to consider any specific factors or to exclude any factors from consideration in making its cost analysis *(Matter of General Motors Corp. v Public Serv. Commn.,* 95 AD2d 876, 877, *lv denied* 60 NY2d 557).

Second, petitioner's contention that the absolute prohibition against unjust and unreasonable charges contained in Public Service Law § 65 (1) connotes a statutory exception to the general rule is belied by *Matter of New York State Council of Retail Merchants v Public Serv. Commn. (supra).* In that case, the Court of Appeals, in construing a similar blanket bar to discriminatory prices or preferential treatment under Public Service Law § 65 (2) and (3), nevertheless applied the general rational basis standard of judicial review *(supra,* at 669-670, 672). We, therefore, see no reason to depart from that standard here.

The record clearly supports the rationality of the PSC's determination to allocate the cost of repairs of the Ginna plant as a result of this unforeseen occurrence to RG&E's stockholders, while permitting the expenses of obtaining alternative energy sources necessary to continue service to be passed on to consumers. The PSC could rationally take into account that the costs were not attributable to managerial

imprudence but that of a single instance of inadvertence by an employee and that RG&E had not only been prudent, but had aggressively pursued a high standard of safety in operating and maintaining the Ginna plant. For all these reasons, the PSC's determination was properly upheld by Supreme Court.

WEISS, J. P., YESAWICH, JR., and HARVEY, JJ., concur.

Judgment affirmed, with costs to respondent Rochester Gas & Electric Corporation.