Kaye, J.
(dissenting). A prime function of the Commission, as a regulatory body, is to separate costs which should be borne by a utility’s ratepayers from costs properly chargeable to its owners (see, Matter of Consolidated Edison Co. v Public Serv. Commn., 66 NY2d 369, 372, appeal dismissed 475 US 1114, reh denied 476 US 1179; Rochester Gas & Elec. Corp. v Public Serv. Commn., 51 NY2d 823, 825, appeal dismissed 450 US 961). In that the Commission properly determined that the economic effects of Crescent’s decision to forego the revenue from its planned expansion should be absorbed by the company’s two principals, not the residential consumers it serves, I would reverse the Appellate Division order and reinstate the Commission’s determination imputing $11,124 of lost revenues to the utility.
As the majority acknowledges, review of Commission determinations begins with several fundamental propositions. First, although not without limit, the authority of the Commission is very broad, in that it must protect the public interest in what is essentially a government-licensed monopoly (see, Matter of Niagara Mohawk Power Corp. v Public Serv. Commn., 69 NY2d 365, 368-369, rearg denied 69 NY2d 1038). Second, the scope of judicial review is very narrow: unless it is shown that the Commission’s determination lacked any rational basis or had no reasonable support in the record, that determination *621 must be sustained (majority opn, at 616). Third, the combination of broad Commission authority and limited judicial authority has particular significance in the area of rate setting by the Commission, which generally involves analysis of technical data within the Commission’s expertise (see, Abrams v Public Serv. Comma., 67 NY2d 205, 211-212).
Applying these propositions to the facts before us, the Commission’s determination should be sustained.
This dispute centers on Crescent’s request for tariff revisions designed to increase its annual operating revenues by 59.9%. In arriving at this figure, Crescent excluded from its pro forma revenues the sum of $11,124, representing projected revenues of its planned but unrealized expansion of service to 110 new residential customers. Crescent argues that the Commission cannot impute these revenues because to do so would be tantamount to coercing expansion outside its service area.
Taking up Crescent’s argument, the majority opinion from start to finish sounds just one note: that the Commission’s imputation of the projected revenues to the utility was unlawful because it in effect compelled Crescent to expand services beyond its territory. No one disputes that the Commission is without authority to force a utility to expand its business operations outside its authorized territory (see, Rochester Gas & Elec. Corp. v Public Serv. Commn., 71 NY2d 313, 325-326). But that principle does not resolve this case.
This is not a case where the Commission has decided that expansion into a new territory would be in the best interests of ratepayers and is penalizing the utility for failing to implement the Commission’s business judgment. Rather, Crescent itself, having excess capacity, filed petitions seeking main extensions into new territories, and Crescent itself included $11,124 of projected revenues from such service. Moreover, Crescent has never argued that it would not make $11,124 if it expanded according to its original plan; at no time has it advanced any reason related to its cost of services, or business operations, for its decision not to pursue the planned expansion.
Also included in Crescent’s petitions was a $2,000 "connection capacity” fee for each new residential unit, which was to go not to the utility but directly into the pockets of Crescent’s two principals.
The petitions were denied by the Commission on the procedural ground that Crescent had failed to obtain the prior *622 approval of the Department of Environmental Conservation, but it noted that the petitions would in any event have been rejected because the $2,000 per-unit connection fee was "unjust and unreasonable.” In rejecting the petitions, the Commission stated:
"Here, the company is attempting to circumvent the statutory scheme by seeking Commission approval of its 'special agreements’ as a condition precedent to seeking DEC approval of the extension in order to secure a fee that would otherwise be unauthorized. It understands that once it obtains DEC approval, it is obligated to serve pursuant to the tariff, but it has indicated that it will not seek approval unless its terms are met.” (Commission Order Denying Petitions, Case 21656, Sept. 28, 1988, at 4.)
In these circumstances, the Commission’s determination that Crescent should not imprudently abandon its decision to expand has both reasonable support in the record and a rational basis.
Unlike a private company, a public utility enjoys a municipally awarded franchise, and therefore is " 'clothed with a public interest.’ ” (Rochester Gas & Elec. Corp. v Public Serv. Commn., supra, at 322, quoting Munn v Illinois, 94 US 113, 126.) The public interest requires that the Commission, by exercising its broad powers under the Public Service Law, guard against abuses in what is essentially a marketplace of monopolies — acting in effect as a "surrogate for competition” (see, Comment, Utility Rates, Consumers and the New York State Public Service Commission, 39 Alb L Rev 707, 709 [1975]; see also, Public Service Law § 89-c).
As the majority notes, the Commission’s rate-setting powers necessarily include assessment of "the prudence of a utility’s actions as those actions impact upon the ratepayers.” (Majority opn, at 617; see also, Matter of Abrams v Public Serv. Commn., supra, at 216-217 [upholding application of the "prudent investment” test for determining if utility could pass along cost of abandoned facility]; Matter of Long Is. Light. Co. v Public Serv. Commn., 134 AD2d 135, 143 [upholding decision to charge utility with costs associated with Shoreham nuclear power plant based on "imprudent management” analysis].) In effect, the Commission, in looking to the consequence of management decisions, is acting to replace absent market forces that would ordinarily guide those decisions.
*623 Nor has the Commission’s rate-setting authority been so stringently restricted to consideration of forces that operate inside a utility’s territory (see, e.g., Matter of General Tel. Co. v Lundy, 17 NY2d 373 [adjustment of operating expenses to reflect excessive payments to affiliates]; see also, Rochester Gas & Elec. Corp. v Public Serv. Commn., 754 F2d 99 [2d Cir] [Commission’s decision to impute revenues from incidental sales upheld, although deemed interstate transactions and therefore subject to Federal regulation]). In concluding that there is "no express or implied legislative authority empowering the PSC to impute income derived from sources outside the utility’s authorized service area” (majority opn, at 619) the majority neglects the Commission’s authority to take such extraterritorial factors into account when fixing a fair rate of return.
The majority’s mechanical rule — strictly limiting the Commission’s rate-setting jurisdiction by the boundaries of the utility’s service area, whatever the circumstances — impairs the ability of the Commission to act in the public interest, and allows a utility to manipulate the regulatory system at the expense of the ratepayers. Without a guarantee that it will be paid the $2,000 per-unit fee — which the Commission has concluded is improper — Crescent has no incentive to make the proper filing with the DEC. Instead, it can simply continue to pass off the cost of its unused capacity to the ratepayers.
Under these circumstances, the Commission acted within its authority in allocating the lost revenues to Crescent’s two shareholders, rather than its 1,650 ratepayers.
Chief Judge Wachtler and Judges Simons, Titone and Hancock, Jr., concur with Judge Alexander; Judge Kaye dissents and votes to reverse in a separate opinion in which Judge Bellacosa concurs.
Order affirmed, with costs.