■ In the Matter of NEW YORK WATER SERVICE CORP., Petitioner, v PUBLIC SERVICE COMMISSION, Respondent.—Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review that portion of a rate determination of the Public Service Commission, dated September 22, 1978, which (1) denied petitioner an allowance for Federal income tax; (2) directed that certain amounts previously collected therefor be refunded to its customers; and (3) ordered the funding of an escrow account. Petitioner, New York Water Service Corporation (NYWS), is a wholly owned subsidiary of Utilities and Industries Corporation (U & I), a holding company which owns or controls a variety of businesses. Neither U & I nor any of its subsidiaries, other than NYWS, are regulated industries. While NYWS is a profitable enterprise and would normally incur liability for Federal income tax, U & I has reported significant losses for several years. When filing consolidated income tax returns, petitioner's income has been offset by U & I's greater

losses with the result that the consolidated group has paid little or no Federal income tax since 1970. Respondent's 1975 orders in a prior rate proceeding allowed petitioner $630,000 annually as a cost of service representing the estimated taxes NYWS would have paid had it filed a separate return, and instructed that the sum be placed in an escrow account to be used only for the purpose of contributing to income taxes actually paid or payable by the consolidated entity. If not so used, it was anticipated that the fund would be applied to reduce the rate base or would be directly refunded to petitioner's customers. No appeal was taken from those orders. Although contributions were thereafter made, no further action was taken in relation to the account until this proceeding was concluded, except for an unauthorized use to pay a prior income tax liability. The foregoing matters became a central consideration in the disposition of petitioner's 1977 application for a further rate increase. Respondent's order, dated September 22, 1978, not only denied the requested increase, but reduced existing rates by $211,223. This determination, which in large part was founded on respondent's elimination of an allowance for future income taxes, also contained a number of affirmative directives. NYWS was required to establish an escrow account of $1,867,000, issue a refund therefrom to its customers of $630,000 plus interest—the sum collected as a tax allowance during the year 1976 when there was no actual tax liability—and to allow its 1977 and 1978 tax returns to be monitored to determine whether additional refunds should be made. Petitioner's request for reconsideration was denied and, since it failed to offer a plan for refunding the escrow moneys as required by the September order, respondent directed it to grant a 5.3% reduction in each customer's bill commencing on January 1, 1979 that would satisfy the refund mandate over a two-year period. In seeking to annul these later orders, NYWS maintains (1) that respondent has arbitrarily and capriciously departed from established policy in disallowing tax liability as a cost of services; (2) that such action has deprived U & I of a valuable asset without due process of law; and (3) that there is a lack of substantial evidence to support its finding of no tax liability to petitioner in the future. Petitioner's initial assertion possesses surface appeal. In 1974 respondent determined that, when a consolidated tax return is filed, a regulated utility should not be controlled by the tax attributes of its parent and should be permitted to recover as a cost an amount representing the full Federal income tax liability it would otherwise incur by filing a separate return (*Citizens Water-Supply Co. of Newtown* (14 NY PSC 1353). However, that ruling contained an important exception (14 NY PSC 1353, 1357): "it is not our intention that the general policy stated here should apply in a case in which the result would be unreasonable and unjust. Such a case might arise if, for example, the consolidated companies did not pay, and were not expected in the future to pay, *any* taxes or a permanently reduced level of taxes is to be expected." Petitioner's contention of a change in established policy obviously rests on *its* interpretation of the *Citizens* exception. In our view, the past tax history of U & I, and particularly the size of the loss carry forward reported on its 1977 Federal income tax return (discussed hereafter), entirely justified respondent's conclusion that a "permanently reduced level of taxes" could be expected in the future. Accordingly, we find no deviation from its policy in fixing NYWS's new rates and note that petitioner's contrary interpretation was made at its own risk. The due process argument advanced by petitioner may be answered in a like manner. U & I and NYWS chose to file consolidated tax returns with full knowledge of the existence of the *Citizens* exception, did not protest the 1975 orders, and, thus, were or should have

been aware that the cost of service charge allowed for taxes might be lost if it were not so utilized in practice. The opportunity to make the decision to consume the "valuable asset" of accumulated losses was all the process that was due. Nor do we find any merit in the claim that the record lacks substantial evidence to support respondent's determination that there should be no future allowance for Federal income tax liability. Respondent accepted $26,000,000 as the amount of the currently available net operating loss carry forward, the sum reported on the consolidated 1977 Federal income tax return, rather than the $13,000,000 figure presented in U & I's financial report. Considering the standard for determining substantial evidence set forth in *300 Gramatan Ave. Assoc. v State Div. of Human Rights* (45 NY2d 176), it was not improper for respondent to credit the higher amount portrayed by the return in concluding that NYWS would pay no income tax in the immediate future. We cannot overlook the fact that the record fails to demonstrate the reason for the discrepancy between the annual report and the tax return, especially since the burden of proving anticipated costs rests with the utility *(Matter of New York Edison Co. v Maltbie,* 244 App Div 436). Although we are satisfied that respondent's determination in this case is proper, we are troubled somewhat by the possibility that our decision might be construed as holding that when no income tax is paid there can be no cost or allowance for such an item. We have previously observed that rates should reflect the tax consequences in dealings between a holding company and its subsidiaries on an analysis of real values to avoid any inequitable advantage *(Matter of Long Is. Water Corp. v Public Serv. Comm. of State of N. Y.,* 49 AD2d 392). The problem here involves the appropriate calculation of such expenses when only one segment of the group is a regulated entity with a guaranteed fair rate of return on its investment (cf. *Matter of Consolidated Edison Co. of N. Y. v New York State Public Serv. Comm.,* 53 AD2d 131). While there is precedent for an allocation of taxes among the various members of the whole in accordance with a predetermined formula (see *Federal Power Comm. v United Gas Pipe Line Co.,* 386 US 237), we will not disrupt the procedures adopted by respondent herein. Our powers of review are limited and the instant orders do not inhibit a prospective re-examination of the refund policy or revenue requirements upon a proper showing of actual and future tax liabilities (see *Matter of County of Orange v Public Serv. Comm. of State of N. Y.,* 37 NY2d 762). Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Greenblott, Kane, Main and Mikoll, JJ., concur.