*613 OPINION, OF THE COURT
Alexander, J.
The Public Service Commission (PSC or Commission) appeals, by leave of this Court, from an order of the Appellate Division, Third Department, which modified its determination as to revenue requirements and allocation for Crescent Estates Water Company (Crescent or Company) by annulling so much thereof as imputed to Crescent operating revenues from homeowners residing outside the Company’s approved service area and remitted the matter to the Commission for further proceedings not inconsistent with the Court’s decision. For the reasons that follow, we affirm the order of the Appellate Division.
I
Crescent Estates Water Company, Inc. is a privately owned water-works corporation which provides water service to some 1,650 residential customers in the Town of Clifton Park, Saratoga County. As a utility, Crescent is subject to the regulatory jurisdiction of PSC pursuant to which the agency is empowered to fix and determine the rates charged by Crescent for supplying water service to its customers (see generally, Public Service Law § 89-c [10]). The rates and charges for water supplied to Crescent’s customers within its approved service area are set forth in tariffs filed with the PSC. Unless an expansion of its service area is approved and a permit issued therefor by the Department of Environmental Conservation (DEC), Crescent may not supply water to customers outside its service area (see generally, ECL 15-1501 et seq.).
In 1988, Crescent filed with the PSC two joint petitions seeking approval of main extension agreements it had negotiated with certain real estate developers in Clifton Park. These agreements called for an expansion of Crescent’s water service to approximately 110 residential dwellings built by these *614 developers on properties located outside Crescent’s approved service territory. Crescent undertook to secure PSC and DEC approval of the main extensions and the concomitant expansion of its service territory. In exchange, the developers agreed to construct the necessary mains and facilities at their own expense, and convey them to Crescent. In addition to certain other payments, the developers agreed to pay a hook-up fee of $2,000 for each residential unit connected.
Shortly thereafter, Crescent filed tariff revisions with the PSC designed to increase its operating revenues effective April 1, 1988. These revisions were suspended by order of the PSC through January 1989, pending investigation and review. Crescent also sought recovery of $28,471 in rate-case expense, a considerable portion of which reflected fees paid to a consultant in connection with the preparation of its rate case. Included in Crescent’s calculation of its rate-year operating revenue projections was $11,124 in additional revenue expected to be derived from providing the service to new customers in its expanded service territory. This inclusion was predicated upon the anticipated approval of the main extension agreements and the expansion of Crescent’s service territory. It appears that the Commission staff initially agreed with Crescent that in the event the petitions were denied, these anticipated additional revenues should be eliminated from the rate calculations.
The PSC disapproved the joint petitions because Crescent had not obtained the approval of DEC for its proposed service expansion and because the $2,000 per unit hook-up fees, which were to be paid to Crescent’s principals and not the corporation, were deemed to be unjust, unreasonable and discriminatory and not in the best interests of the ratepayers. The PSC indicated however that it agreed with Crescent that the proposed expansion was prudent and that it would give its approval if after DEC authorization, the expansion was undertaken with reasonable and nondiscriminatory rates. The PSC indicated further that the Company’s "prudent expansion of its revenue base or, conversely, the imprudent failure to so expand [would be] one factor” the Commission would consider in determining Crescent’s rate case. Crescent challenged this determination disapproving the main extension agreements in an article 78 proceeding that was transferred to the Appellate Division, Third Department (CPLR 7804 [g]). The challenge *615 was rejected by the Appellate Division and Crescent’s petition dismissed (159 AD2d 765).[1]
In the meantime, in light of the PSC’s disapproval of the main extension agreements, Crescent attempted to exclude the projected $11,124 anticipated new service revenues from its operating revenue forecast in the rate-case proceeding pending before the Administrative Law Judge (ALJ). It appears from the record that both the Company’s expert and the Commission staff had initially agreed that these projections should be excluded if the agreements were disapproved since their inclusion in that circumstance would impact adversely upon the Company’s rate of return. The Commission staff changed its position however after the main extension agreements were disapproved. In his recommended decision, the AU rejected Crescent’s attempt to exclude these anticipated new service revenues and included them in the rate-year revenue projection. Additionally, he allowed recovery of only $11,891 of the requested $28,471 rate-case expense, to be amortized over four years.
The PSC issued its final order in which it approved the inclusion of these anticipated new service revenues in Crescent’s rate-year projection but reduced the allowed rate-case expense recovery to $9,513, to be amortized over a two-year period.[2] As to the imputation of the anticipated new service revenues, the Commission observed that it had strongly urged the Company to expand its territory, that in view of the Company’s excess capacity such an expansion would be prudent and a failure to expand would be imprudent. It concluded that the revenue imputation was clearly reasonable and "provides the company’s managers an incentive to undertake a desirable project and protect ratepayers from the consequences of a failure to do so.” The Commission found that because the Company itself initially set the figure of $11,124 as its anticipated revenue growth, the imputation of that amount represented an "accurate assessment of the revenues to be earned from new customers.”
Crescent challenged this determination in an article 78 proceeding which was transferred to the Appellate Division, Third Department (see, CPLR 7804 [g]). As indicated that *616 court modified the determination insofar as it imputed the anticipated revenues from the additional customers residing outside Crescent’s service area into Crescent’s operating revenue forecast, concluding that such imputation "amount[s] to an indirect order to [Crescent] to expand its service territory and, thus, [PSC] exceeded its authority” (161 AD2d 882, 885).
The PSC argues on its appeal to this Court that its rate-making authority is. necessarily broad and encompasses the authority to impute to Crescent’s operating revenue forecast the available additional income, since it would have been prudent for Crescent’s management to undertake this expansion for the benefit of its ratepayers. Thus, the Commission argues, Crescent’s failure to do so for reasons wholly unrelated to the Company’s best interest and the interest of its ratepayers, was an imprudent management decision which the Commission could consider in setting new rates pursuant to its rate-making authority. The Commission concludes therefore, that the Appellate Division erred in determining that the contested imputation was beyond the PSC’s authority and that the imputation of the projected revenues constituted an indirect order to Crescent to expand its services. The Commission argues that the imputation of these additional, available revenues merely recognizes the "cost of [Crescent’s] imprudence” to the Company’s customers.
II
The Public Service Commission is empowered by the Legislature to assure that "[a]ll charges made or demanded by any * * * water-works corporation for water * * * shall be just and reasonable and not more than allowed by law or by order of the commission” (Public Service Law § 89-b [1]). To this end the Commission has broad discretion to review and determine the reasonableness of any rates or charges sought to be imposed by any water-works corporation (Public Service Law § 89-c [10]), and "unless it is shown that the judgment of the PSC [in the exercise of this discretion] was * * * 'without any rational basis or without any reasonable support in the record’, its determination will not be set aside” (Matter of Abrams v Public Serv. Commit., 67 NY2d 205, 212, citing Matter of New York State Council of Retail Merchants v Public Serv. Commn., 45 NY2d 661, 672).
However, the Commission only "possesses those powers expressly delegated to it by the Legislature, or those inciden *617 tal to its expressed powers, together with those required by necessary implication to enable the Commission to fulfill its statutory mandate” (Matter of Niagara Mohawk Power Corp. v Public Serv. Comma., 69 NY2d 365, 368-369). Concededly, the Commission has no power to compel a water-works corporation to expand and provide service to customers beyond its approved service area (see, Matter of Utica Tr. Corp. v Feinberg, 277 App Div 464; see also, Rochester Gas & Elec. Corp. v Public Serv. Comma., 71 NY2d 313; Interstate Commerce Comma, v Oregon-Washington R. R. Co., 288 US 14). The issue here, then is whether the imputation of these revenues is a proper exercise of PSC’s rate-making power or an improperly imposed compelled expansion of Crescent’s service area.
In Rochester Gas & Elec. Corp. v Public Serv. Comma. (71 NY2d 313, 326, supra) we noted that the Feinberg court "recognized the general rule that governmental regulation forcing a carrier to extend its operation into previously unserviced area, beyond its commitment, is a taking.” In both Feinberg and Rochester Gas & Elec., however, the courts concluded that the challenged regulatory determinations did not compel the provision of services beyond the company’s original commitment, they did no more than require the companies to extend their services within the areas they had already committed to serve.
PSC argues here that its imputation of the contested revenues does not compel Crescent to extend its water service beyond its approved area, rather the order is merely an appropriate exercise of its rate-making authority pursuant to which it may protect the ratepayers within the approved area (and apparently outside that area, according to the PSC) from the Company’s imprudent failure to take advantage of the opportunity to expand its service.
There is of course, no gainsaying the PSC’s broad rate-making powers, which are sufficient to allow it generally to assess the prudence of a utility’s actions as those actions impact upon the ratepayers. Indeed, a specific function of the rate-making power is to protect the utility’s ratepayers (Matter of Niagara Mohawk Power Corp. v Public Serv. Comma., 69 NY2d 365, 369, supra; Matter of General Tel. Co. v Lundy, 17 NY2d 373, 382). Thus in its review of the utility’s operating expenses, the Commission may act to "prevent unreasonable costs for materials and services from being passed on to ratepayers.” (Matter of General Tel. Co. v Lundy, supra, at 378.)
*618 The Commission acknowledges that no New York case has specifically addressed the issue we now consider. The reported New York cases have dealt primarily with instances where there has been a disallowance of a utility’s costs or the exercise of the Commission’s authority in respect to matters involving affiliates of the regulated utility (see, e.g., Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn., 66 NY2d 956, affg for reasons stated at 107 AD2d 357; Matter of General Tel. Co. v Lundy, 17 NY2d 373, supra; Matter of Port Chester Water Works v Public Serv. Commn., 84 AD2d 898, lv denied 56 NY2d 504; Matter of New York Water Serv. Corp. v Public Serv. Commn., 72 AD2d 841, lv denied 49 NY2d 706, appeal dismissed 49 NY2d 799, cert denied 449 US 844; Matter of Spring Val. Water Co. v Public Serv. Commn., 71 AD2d 55, lv denied 49 NY2d 706; Matter of Long Is. Water Corp. v Public Serv. Commn., 49 AD2d 392). The Commission argues however, that its power to set reasonable rates necessarily includes the ability to adjust the Company’s claimed revenue forecast through revenue imputations. In support, the Commission points to one of its prior determinations (apparently not challenged by the utility there involved) in which it imputed to the utility revenues that could be derived from its excess capacity. The Commission concluded in that case, that inasmuch as the excess capacity had been built by the utility, the burden of carrying the costs of that excess plant should be shared between the shareholders and the ratepayers (see, Matter of Central Hudson Gas & Elec. Corp., Case 27032, 17 NY PSC 401 [July 8, 1977]). The Commission also relies upon a decision of the Second Circuit in Rochester Gas & Elec. Corp. v Public Serv. Commn. (754 F2d 99), which upheld the imputation of revenues from the company’s incidental sale of electricity for resale in interstate commerce, in computing the rate adjustment necessary to permit the utility to earn its authorized rate of return. However, neither of these cases, nor any of the other cases cited by PSC support its position here. None of the determinations in those cases involved the imputation of revenues deriving from sources outside the utility’s authorized service area.
In the Central Hudson Gas & Elec, case relied upon by the Commission, the imputed revenue was that which the utility would have received had it utilized its excess capacity to make sales within its approved territory. In Rochester Gas & Elec. Corp. v Public Serv. Commn. (754 F2d 99, supra), the issue was whether, in computing the company’s authorized rate of re *619 turn, it was permissible for the PSC to include estimated revenues from incidental sales actually being made by the company, in light of the fact that these sales are interstate sales regulated by the Federal Energy Regulatory Commission (FERC) and thus beyond PSC’s jurisdiction. The court rejected Rochester Gas & Electric’s claim that the imputation of an estimated level of sales "compelled” those sales or constituted an attempt to "regulate” in a preempted field. The court observed that the imputation was not an attempt to regulate those sales and that the reasonableness of the level of imputation was not questioned. The court concluded that "[w]hile [the imputation] may provide some incentive to operate efficiently, * * * PSC’s recognition that [the company] will make incidental sales and its inclusion of a reasonable estimate of those sales in [its] revenue base [would not] materially affect [the company’s] incidental sales decisions.” (Id., at 102 [emphasis added].) The court noted further that "[i]ndeed * * * [the company does not argue] that but for the imputation policy it would engage in a lesser level of incidental sales.” (Id.) Because incidental sales in that case were in fact being made by the company it could not be Said that the imputation of a reasonable level of revenue from those sales "compelled” such sales.
Here, of course, Crescent has not made any of the imputed sales and cannot make them and realize the revenue therefrom, unless it expands its approved area of service. These cases then, do not support PSC’s contention that its rate-making authority authorizes it to impute revenue from sales outside a utility’s territory into that utility’s revenue projections.
We find no express or implied legislative authority empowering the PSC to impute income derived from sources outside the utility’s authorized service area in computing its rate-year projections. Such authority may not be implied as necessarily incidental to the rate-making power since the ineluctable effect of such an imputation here, is to compel the utility to expand its services in order to actually receive that projected income or suffer a deprivation of a fair return on its investments through the rate set.
Indeed, Crescent contends, and the PSC does not dispute that the 15% rate of return which the Commission has approved as being a just and reasonable return can only be achieved if the disputed $11,124 of imputed revenue is actu *620 ally received. Should these revenues not be actually realized, according to Crescent, its actual rate of return would be only 10.76%. While the specific function of the PSC’s rate-making power is to protect the utility’s ratepayers (see, Matter of Niagara Mohawk Power Corp. v Public Serv. Commn., 69 NY2d 365, 369, supra; Matter of General Tel. Co. v Lundy, 17 NY2d 373, 380, supra) the PSC may not deny a utility a reasonable rate of return on its investment (see, Matter of New Rochelle Water Co. v Public Serv. Commn., 31 NY2d 397, 407). Under the facts of this case, the only way in which Crescent can realize these revenues and thus enjoy the 15% just and reasonable return, would be to expand its service to the additional customers.
Thus we conclude that the imputation of these projected revenues in Crescent’s rate-year projections was unauthorized, was beyond PSC’s rate-making power and therefore was arbitrary and capricious.
Accordingly the order of the Appellate Division should be affirmed, with costs.

. Crescent did not appeal the Appellate Division’s affirmance.

. This portion of the Commission’s determination was confirmed by the Appellate Division and Crescent’s cross motion for leave to appeal was denied (76 NY2d 708).