In the Matter of Spring Valley Water Company Inc., Petitioner, v Public Service Commission of the State of New York, Respondent.

Third Department, February 13, 1992

### APPEARANCES OF COUNSEL

*Hiscock & Barclay (Timothy P. Sheehan* of counsel), for petitioner.

*William J. Cowan (Lawrence G. Malone* of counsel), for respondent.

### OPINION OF THE COURT

CASEY, J.

Petitioner, an investor-owned water utility regulated by respondent, the Public Service Commission (hereinafter PSC), contends that the PSC erred in directing that petitioner's rate base be reduced to reflect the entire capital gain that should have been realized upon the transfer of approximately 23 acres of vacant land in the Town of Clarkstown, Rockland County. The land had been acquired for about $9,000 by petitioner in 1949 as a buffer to protect one of its reservoirs but was determined to be no longer necessary for utility purposes. It was therefore transferred by petitioner to one of its affiliates in April 1985 for $304,000, which, in turn, sold the property to a developer several months later for $1,806,000. Before the transfer of the property to its affiliate, petitioner applied to the PSC for approval of the transfer and submitted an appraisal report which served as the basis for the $304,000 transfer price. Based upon a report of its staff which found the proposed sales price to be reasonable and

recommended approval of the transfer, the PSC authorized petitioner to transfer the property for $304,000. Petitioner agreed that its rate base would be reduced by the amount of the capital gain achieved by this transfer.

Prior to its application for PSC approval of the transfer, petitioner had hired a land planning consultant to prepare a subdivision map and seek subdivision approval from the local planning board. In its application for PSC approval of the transfer, petitioner disclosed neither the planning work that had been done nor the fact that preliminary subdivision approval had been obtained. After the PSC had approved the transfer but before title had passed, petitioner's affiliate solicited bids for the property and received some 14 offers from developers, ranging from $380,000 to the $1,806,000 bid which was accepted.

Title passed to the affiliate in April 1985 and thereafter the affiliate reimbursed petitioner for the cost of the planning work performed in regard to the subdivision. The affiliate signed contracts for sale of the property to the highest bidder in July 1985 and title passed to the assignee of the highest bidder in November 1985. Following an investigation of the sale of the property, which apparently was instigated as the result of certain legislative action (see, L 1986, ch 217), the PSC instituted a proceeding to consider the reasonableness of the originally approved transfer value of $304,000.

After numerous hearings and attempts to settle the land transfer value proceeding, the PSC determined that the land transfer value should be $1,692,000, instead of the originally approved value of $304,000, resulting in a capital gain of $1,122,304 rather than the previously determined gain of $180,408. The PSC also concluded that petitioner's rate base should be reduced by the entire amount of the newly determined capital gain, and the rate base reduction was effected in the PSC's determination in a then-pending rate case.

Petitioner contends that the purpose and effect of the rate base reduction directed by the PSC was to appropriate and then transfer to petitioner's customers the entire gain that petitioner realized on the sale of its land, resulting in an unconstitutional per se taking of private property without just compensation (see, Loretto v Teleprompter Manhattan CATV Corp., 458 US 419). We agree with the PSC, however, that there has been no per se taking of petitioner's property. The gain itself remains with petitioner and its affiliate; the PSC's

determination effectively excludes that gain as an item upon which petitioner and its investors are entitled to receive from the rates paid by its customers a fair return on invested capital *(see, Matter of Niagara Mohawk Power Corp. v Public Serv. Commn.,* 59 AD2d 73, 75, *lv denied* 43 NY2d 646, *cert denied* 437 US 901). Nevertheless, because the effect of the rate base reduction can be viewed as depriving petitioner of the full benefit of future returns on the investment of the gain, we conclude that the PSC's action has resulted in an impairment of the use of private property and, therefore, is subject to the ad hoc inquiry set forth in *Penn Cent. Transp. Co. v New York City* (438 US 104, 122).

In so concluding, we reject the PSC's claim that there can be no taking of property in any case that involves utility rates. According to the PSC, whenever utility rates are involved the question is not whether the PSC erred in its consideration of a particular factor, but rather the issue is whether the total effect of the rate order, or its "ultimate result", is rates that are just and reasonable *(see, Matter of St. Lawrence Gas Co. v Public Serv. Commn.,* 54 AD2d 815, *affd* 42 NY2d 461). The principle relied upon by the PSC is based upon recognition that the rate-making process "involves a balancing of the investor and the consumer interests" and that there may be various permissible ways to arrive at a rate base on which the utility's return is computed *(Power Commn. v Hope Gas Co.,* 320 US 591, 603).

■ In this case, however, the determination that petitioner's rate base should be reduced by the entire amount of the capital gain that should have been realized upon the transfer of the land to petitioner's affiliate was not made in the context of a rate-making proceeding in which the PSC balanced investor and consumer interests and selected a permissible method to arrive at petitioner's rate base. Rather, the determination was made in a proceeding that was commenced for the limited purpose of considering the propriety of the price for the transfer of the land from petitioner to its affiliate. The reduction in petitioner's rate base was ordered as a remedy based upon the PSC's finding that the land transfer value was much greater than originally determined, and not in the context of an over-all determination as to what rates would be just and reasonable. Although the reduction actually resulted from the determination in the pending rate case, it is undisputed that the determination in the rate case simply put into effect the determination arrived at by the PSC in the land transfer

value case. In these circumstances, despite the incorporation of the determination made by the PSC in the land transfer value case into its determination in the rate-making case, we are of the view that the PSC's determination in the land transfer value case is subject to the principle that if government regulation affecting economic interests or expectations goes too far the government's action will be treated as a public taking for which just compensation is required (see, Rochester Gas & Elec. Corp. v Public Serv. Commn., 71 NY2d 313, 324).

Examination of the three factors which are of particular significance in determining whether governmental action constitutes a taking (see, supra) leads us to conclude that the PSC's determination did not result in a taking for which just compensation is required. First, although the determination deletes the amount of the gain as an item on which petitioner is entitled to a fair return from its customers, the gain itself remains available to petitioner and its affiliate to invest as they see fit and thereby earn a return separate and apart from what the customers pay. The net result is that petitioner's total return should be approximately the same as it was before the land transfer and, therefore, the economic impact on petitioner appears to be minimal.

Second, we see no adverse effect on petitioner's investment-backed expectations. As a public utility, petitioner's general investment expectations included the knowledge that it was subject to extensive regulation (see, Rochester Gas & Elec. Corp. v Public Serv. Commn., supra, at 325). Petitioner could not legitimately expect that the entire gain realized upon the sale of property originally acquired and held for utility purposes, the cost of which was included in the rate base and the real property taxes on which were paid by petitioner's customers, would not be factored into petitioner's rates. On the contrary, the PSC's determination was based upon a long-standing policy which was embodied in its regulations (see, 16 NYCRR 563.7 [e]).

Third, no permanent appropriation of petitioner's property rights is involved. As previously noted, the gain itself remains with petitioner and its affiliate, and the opportunity to earn a fair return, through the rates paid by petitioner's customers and the investment of the gain, remains unimpaired.

In sum, what petitioner has been deprived of is a continued return on the full rate base as it existed prior to the land

transfer, plus a return on the investment of the gain realized by the land transfer. For the reasons set forth, we find no taking of private property which required just compensation.

Petitioner also argues that the policy should not apply to the portion of the gain allegedly attributable to petitioner's preliminary activities related to developing the property as a residential subdivision. According to petitioner, those activities were not engaged in as part of petitioner's performance of its public utility service business, but solely for the purpose of enhancing the value of land that was no longer needed for utility business. Petitioner's argument reveals that had the PSC decided to exclude the enhanced value from the amount of the rate base reduction, a rational basis exists to support such a decision. We are of the view, however, that the argument is insufficient to establish the irrationality of the decision actually made by the PSC to include that enhanced value. As the PSC points out, petitioner is not a hybrid type of entity engaged partially in the utility business and partially in other unregulated business. Petitioner's business is that of a water utility, not a real estate developer. The PSC could, therefore, rationally conclude that the activities undertaken by petitioner to obtain preliminary subdivision approval, while not direct utility business, were at least incidental to petitioner's utility business, particularly in view of the fact that the land was acquired and held for years for utility purposes only.

We have considered petitioner's other arguments and see no need to discuss them, except to note that the PSC's original approval of the sale should not be given collateral estoppel effect *(cf., Allied Chem. v Niagara Mohawk Power Corp.,* 72 NY2d 271, *cert denied* 488 US 1005). The PSC's determinations should therefore be confirmed.

Weiss, P. J., Levine, Mercure and Crew III, JJ., concur.

Adjudged that the determinations are confirmed, without costs, and petition dismissed.