[597 NYS2d 760]

In the Matter of NEW YORK TELEPHONE COMPANY, Petitioner,
v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW
YORK, Respondent.

Third Department, May 13, 1993

218

## APPEARANCES OF COUNSEL

*Nixon, Hargrave, Devans & Doyle,* New York City *(Michael T. Tomaino* of counsel), and *John M. Clarke,* New York City, for petitioner.

*William J. Cowan,* Albany *(Lawrence G. Malone* of counsel), for respondent.

## OPINION OF THE COURT

MIKOLL, J. P.

In March 1990, petitioner filed an extensive rate increase request with respondent for the rate year 1991 (hereinafter the rate year). Following an investigation of the reasonableness of this request by members of respondent's staff, evidentiary hearings were held and a panel of Administrative Law Judges issued a decision recommending a $23.6 million reve-

nue increase. Respondent issued an order that, *inter alia,* adopted the recommended decision, with certain exceptions, and allowed petitioner to change its rates to produce an annual revenue increase of $250 million out of the $789.8 million in revenues requested. This order was supported by a later opinion and order. Petitioner's subsequent request for reconsideration of respondent's determination was granted in part and denied in part. Thereafter, petitioner commenced this CPLR article 78 proceeding principally challenging two adjustments made by respondent to petitioner's proposed expenses for the rate year.[1] Following joinder of issue, the proceeding was then transferred to this Court by order of Supreme Court *(see,* CPLR 7804 [g]).

■ Initially, we reject petitioner's contention that respondent improperly disallowed $35 million of the approximately $70 million in expenses that petitioner claimed it had incurred in connection with an accelerated outside plant rehabilitation program that petitioner undertook.[2] On this point, we note at the outset that there is substantial evidence in the record to support respondent's determination that petitioner acted imprudently by merely maintaining its outside plant facilities instead of replacing them at reasonable intervals when it became apparent that this was necessary.[3] Significantly, if a utility spends excessive amounts on maintenance of outside plant facilities at times when economic indicators reveal that the equipment should be replaced rather than merely maintained, respondent can rationally conclude that the excessive amounts spent on maintenance should be excluded from petitioner's rate base as unreasonably incurred *(see, Matter of Crescent Estates Water Co. v Public Serv. Commn.,* 77 NY2d 611, 617; *Matter of Niagara Mohawk Power Corp. v Public Serv. Commn.,* 69 NY2d 365, 370, *supra).* Here, the record reveals that respondent's staff conducted several studies that determined, *inter alia,* that petitioner had undertaken an insufficient outside plant rehabilitation program for

---

1. Respondent calculates petitioner's allowable rates by forecasting petitioner's expenses for the upcoming year on the basis of expenses historically incurred *(see, Matter of Niagara Mohawk Power Corp. v Public Serv. Commn.,* 69 NY2d 365, 370). Thus, a reduction in or adjustment to past expenses would reduce petitioner's allowable rates.

2. Outside plant refers to facilities, such as poles, cables and wires, that connect customers to petitioner's central offices.

3. Because the determination at issue involves a hearing required by law, the substantial evidence standard of review is applicable *(see,* CPLR 7803 [4]).

the years 1984 through 1988, that petitioner was aware or should have been aware of the need to rehabilitate its outside plant and that, had petitioner undertaken a sufficient outside plant rehabilitation program, it would have saved significant rehabilitation expenses in the rate year. Although petitioner presented evidence tending to contradict the studies, we note that once the specter of imprudence is raised, as it was here by the staff studies, the burden is then placed on petitioner to establish that a particular expense was prudently incurred *(see, Matter of Long Is. Light. Co. v Public Serv. Commn.,* 134 AD2d 135, 144). In light of all the evidence presented, respondent rationally credited its staff's studies and rationally concluded that petitioner failed to sustain its burden.

■ We also reject petitioner's claim that respondent's determination was impermissibly based on a hindsight view. In order for a particular expense to be excluded as imprudent, the surrounding facts and circumstances must be viewed as of the time that the expense was incurred *(see, supra).* We find that the determination here adequately complied with this standard. While it is true that the studies relied upon were partially based on information from 1989 and 1990, the studies also revealed that service problems, book depreciation rates compared with actual outside plant rehabilitation, reports to petitioner from respondent's staff of the need to rehabilitate its outside plant and other factors should have put petitioner on *notice* as early as 1984 that it needed to undertake a more significant outside plant replacement program. Accordingly, petitioner's argument that respondent relied solely on a hindsight analysis is unpersuasive.

■ ■ Next, contrary to petitioner's assertions, we disagree that respondent's adjustment of petitioner's outside plant expenditure was a service penalty imposed by respondent to punish petitioner for failing to provide adequate service *(see,* Public Service Law § 25; *see also,* Public Service Law §§ 97, 98). While it is true, as petitioner points out, that respondent did partially rely on service problems experienced by petitioner's subscribers in making its adjustment, this does not automatically mean that the adjustment is actually a penalty for poor service. As respondent's opinion makes clear, the reference to service problems was only made to justify respondent's conclusion that petitioner should have undertaken its accelerated outside plant rehabilitation program much earlier than it actually did. Such a course of action would have rendered unnecessary the need for petitioner to incur the large expen-

ses for which petitioner now seeks recovery. Accordingly, respondent did not penalize petitioner for poor service; it merely adjusted petitioner's proposed rate base on the ground that certain expenses were not reasonably incurred and should therefore not be passed on to ratepayers. Because such a conclusion was within respondent's power to prevent unreasonable costs from being passed on to ratepayers (see, Matter of Crescent Estates Water Co. v Public Serv. Commn., supra; Matter of Niagara Mohawk Power Corp. v Public Serv. Commn., supra), no basis for disturbance of respondent's determination on this ground has been presented.

■ We have examined respondent's alternative rationale for the adjustment, i.e., that respondent merely imputed into the rate year the savings to be realized over several years by petitioner's accelerated rehabilitation program, and have also found it to be rational. Petitioner claims that respondent impermissibly deviated from its stated policy, which requires a utility's revenue requirements to be determined on the basis of forecasts of expenses in the upcoming months (see, Re Test Periods in Rate Cases [Statement of policy on test periods in major rate proceedings], 22 PUR4th 611). According to petitioner, respondent deviated from this policy by reducing its expenses (the amount of which was uncontested) that it would actually incur in the rate year, even though the savings from petitioner's accelerated rehabilitation program would be realized over several years.

We find, however, that respondent adequately articulated a rational basis for its deviation (see, Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn., 154 AD2d 31, 35). Respondent found that petitioner was required to undertake an accelerated rehabilitation program only because it had failed to undertake an adequate outside plant rehabilitation program from 1984 through 1989. Because the rehabilitation was accelerated, expenses that petitioner proposed to be incurred in the rate year were greater than the expenses that petitioner would have incurred had it acted prudently. In other words, had petitioner acted prudently, the outside plant rehabilitation expenses that petitioner proposed to be included in the rate year would have been incurred over several years and would have been matched by relevant savings in each year. As a result, respondent rationally found that the savings to be realized over several years could be imputed into the

rate year because petitioner's outside plant expenditures for the rate year were inordinately high.[4]

█ Petitioner also challenges respondent's exclusion of $13.85 million of expenses paid by petitioner to its unregulated affiliate, NYNEX Material Enterprises Company (hereinafter MECO), for removal of central office equipment.[5] In our view, however, the record evidence adequately supported respondent's adjustment. For example, the evidence revealed that petitioner failed to comply with its own purchasing procedure when contracting with MECO by, *inter alia,* deviating from competitive bidding practices. Petitioner also chose MECO for central office equipment removal jobs without performing adequate cost/benefit analyses and despite MECO's lack of experience in removals of this nature. Studies by respondent's staff also indicated that MECO failed to choose adequate vendors or subcontractors, did not use an adequate list of vendors, failed to properly choose and supervise vendors and failed to control costs. Staff studies and audits also revealed that the costs of jobs managed by MECO were substantially higher than those jobs directly managed by petitioner.

All of these and other factors adequately raised the specter of imprudence so as to place the burden on petitioner to justify the reasonableness of its expenditures *(see, Matter of Long Is. Light. Co. v Public Serv. Commn.,* 134 AD2d 135, 144, *supra).* Relying on its own study and a study conducted by an independent accounting firm, petitioner attempted to meet this burden by indicating that the difference in costs between MECO-managed jobs and those managed by petitioner were attributable to job differences. Nevertheless, the Administrative Law Judge panel rejected petitioner's studies on the grounds that they failed (1) to address the issues of the alleged mismanagement of the removal project by petitioner and MECO, and (2) to establish that the mismanagement did not result in unreasonable expenses. Respondent basically adopted the finding that petitioner failed to sustain its burden of rebutting the specter of imprudence and we find that substan-

4. We note that although petitioner appears to have challenged the quantification of respondent's adjustment in its petition to respondent for reconsideration, the issue is not raised on review; therefore, any arguments on this issue should be deemed abandoned *(see, e.g., First Natl. Bank v Mountain Food Enters.,* 159 AD2d 900, 901).

5. Central office equipment consists of switches and other equipment in petitioner's central offices that need to be periodically replaced due to normal wear and tear.

tial evidence supports this conclusion. Consequently, respondent's determination must be confirmed.

All other issues raised by petitioner but not specifically addressed have been rejected as unpersuasive.

YESAWICH JR., MERCURE and CREW III, JJ., concur.

Adjudged that the determination is confirmed, without costs, and petition dismissed.