[614 NYS2d 454]

In the Matter of ROCHESTER TELEPHONE CORPORATION et al., Petitioners, v PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK et al., Respondents.

Third Department, June 30, 1994

**APPEARANCES OF COUNSEL**

*Nixon, Hargrave, Devans & Doyle,* Rochester *(Michael T. Tomaino* and *Terrance P. O'Grady* of counsel), and *Michael J. Shortley, III,* Rochester *(Helen A. Zamboni* of counsel), for Rochester Telephone Corporation, petitioner.

*Cullen & Dykman,* Brooklyn *(Steven L. Zelkowitz, Peter M. Metzger* and *Jacqueline I. Hardy* of counsel), *Edwin W. Scott,* New York City *(Marc Richter* of counsel), and *Victor A. Roque,* Pearl River *(John L. Carley* of counsel), for Brooklyn Union Gas Company and others, petitioners.

*Matthew J. Picardi,* Syracuse *(Thomas J. O'Neill* of counsel), and *Gould & Wilkie,* New York City *(Peter V.K. Funk, Jr.,* and *Eric O. Costello* of counsel), for Niagara Mohawk Power Corporation, petitioner.

*Huber, Lawrence & Abell,* New York City *(Alfred L. Nardelli* and *Gregory J. Blasi* of counsel), for New York State Electric & Gas Corporation and others, petitioners.

*John M. Clarke,* New York City *(Jerome M. Balsam, Patrick A. Lee* and *Cornelia McDougald;* and *Guy Miller Struve,* New York City *[Davis, Polk & Wardwell],* of counsel), for New York Telephone Company, petitioner.

*Ronald J. Tanski,* Buffalo, for National Fuel Gas Distribution Corporation, petitioner.

*William J. Cowan,* Albany *(Lawrence G. Malone* of counsel), for Public Service Commission, respondent.

*Joel Blau,* Albany, for New York State Consumer Protection Board, respondent.

### OPINION OF THE COURT

CASEY, J.

Concerned about the need for an adjustment to a utility's rates to reflect the uncompensated use of certain intangible utility assets by the utility's unregulated affiliates and to offset certain costs imposed on the utility by its affiliates that could not be readily or directly quantified, respondent Public Service Commission (hereinafter the PSC) ordered a separate proceeding to consider the propriety and need for such an adjustment. Although the issues originally arose in the context of a proceeding involving petitioner Rochester Telephone Corporation (hereinafter RTC), other interested parties, particularly the other New York utilities with unregulated affiliates, were given the opportunity to present evidence and arguments on the issues. Hearings were held and a recommended decision was issued by an Administrative Law Judge in 1985, but the proceeding lay dormant until May 1990, when the PSC issued an order which concluded that the PSC had legal authority to make the adjustment and reopened the record for the limited purpose of determining whether an adjustment should be made in RTC's rates. The PSC thereafter clarified its order by declaring that the case would also be the initial forum for determining the principles applicable in future utility rate cases. After further hearings, the PSC issued the principal determination at issue, Public Service Commission Opinion and Order No. 93-11 (hereinafter Opinion No. 93-11), which imputed to RTC a royalty payment of 2% of the total capitalization of RTC's unregulated operations, regardless of when RTC's investment occurred. Opinion No. 93-11 also effectively established a rebuttable presumption that a 2% royalty similar to that imputed to RTC would be imputed

for ratemaking purposes with respect to any utility's investment in unregulated operations. The PSC thereafter denied all petitions for rehearing in Public Service Commission Opinion and Order No. 93-11 (A) (hereinafter Opinion No. 93-11 [A]).

RTC and other utilities commenced this CPLR article 78 proceeding to challenge the PSC's determinations in Opinions Nos. 93-11 and 93-11 (A). The matter was transferred to this Court. Petitioners raise a large number of arguments in their briefs, but the challenges to Opinion No. 93-11 essentially fall into four categories: (1) the PSC's authority to make the adjustment, (2) the need for an adjustment, (3) the basis for the mechanism selected by the PSC to effect the adjustment, and (4) the constitutionality of the adjustment. The remainder of this decision will focus on the four categories set forth above. Although we will not address each and every argument presented by the parties, we have considered all of the arguments in reaching the conclusions stated herein.

The 2% royalty established by the PSC has two aspects: a regulated value assurance mechanism (hereinafter RVAM) and a positive benefits mechanism. The PSC concluded that an RVAM was needed to recognize the free transfer from the utility to its affiliates of such intangible assets as the utility's name and reputation. The need for the positive benefits mechanism was found to arise out of the regulated utility's abundant incentive to shift costs from its competitive to its monopoly operations. Concluding that a precise figure could not be objectively fixed for either the RVAM or the positive benefits mechanism because of the very nature of the factors which give rise to the need for the mechanism, the PSC decided to use the 2% royalty as an over-all measure of both the RVAM and the positive benefits mechanism.

■ We reject the claim that the PSC lacked the authority to establish the 2% royalty as an adjustment to RTC's rates. By statute, the PSC is required to ensure that rates charged by RTC and other utilities are "just and reasonable" (see, e.g., Public Service Law § 91 [1]). In exercising its statutory responsibility over utility rates, the PSC has broad authority with respect to the factors to be considered and formula or formulae to be used, subject only to the limitation that there must be a rational basis and reasonable support in the record for the judgment exercised by the PSC (see, Matter of Abrams v Public Serv. Commn., 67 NY2d 205, 212, 215). The PSC's broad authority to determine just and reasonable rates includes not

only the right but the duty to scrutinize transactions between a utility and its affiliates *(see, Matter of General Tel. Co. v Lundy,* 17 NY2d 373, 380), and to make rate adjustments when the utility is being overcharged by affiliated suppliers *(see, supra,* at 381). Exercising its power to scrutinize transactions between a utility and an affiliate, the PSC recently investigated a sale of land by a utility to the affiliate at less than fair market value and adjusted the utility's rate base to reflect the inadequate price paid by the affiliate *(see, Matter of Spring Val. Water Co. v Public Serv. Commn.,* 176 AD2d 95, 97, *lv denied* 80 NY2d 758, *appeal dismissed* 80 NY2d 825). The PSC has also exercised its ratemaking authority to include an unregulated affiliate's short-term debt in the utility's capitalization, concluding that because the affiliate could not have been acquired but for its status as part of the parent system, the system was indirectly providing some equity to support the short-term debt *(see, Matter of National Fuel Gas Distrib. Corp. v Public Serv. Commn.,* 107 AD2d 357, 360-361, *affd* 66 NY2d 956). We conclude that the 2% royalty established by the PSC falls within its broad authority to determine just and reasonable rates, which includes the right and responsibility to scrutinize transactions between a utility and its affiliates.

We reject the claim that the PSC could not establish the royalty because it had previously approved RTC's diversification and investment in its affiliates *(see, Matter of Spring Val. Water Co. v Public Serv. Commn., supra,* at 100). We are also unpersuaded by the claim that the PSC's determination deviates from prior PSC orders. There is no merit in the claim that the PSC's action was preempted by the Public Utility Holding Company Act of 1935 (15 USC § 79 *et seq.;* hereinafter PUHCA). Preemption requires evidence of Congress' clear intent to preempt State law *(see, State of New York v Shaw,* 189 AD2d 1057, 1058), but the provisions of PUHCA reveal Congress' intent to preserve and continue State regulation of utilities *(see, e.g.,* 15 USC § 79f [b]; § 79g [g]; § 79i [b]). We also note that imputing a 2% royalty to the utility is not the same as ordering the subsidiaries to make payments to the utility *(see, Matter of Spring Val. Water Co. v Public Serv. Commn., supra).*

Nor was the PSC precluded from imputing the royalty to RTC by the holding in *Matter of Crescent Estates Water Co. v Public Serv. Commn.* (77 NY2d 611). To the contrary, the Court of Appeals expressly recognized the PSC's authority "to

assess the prudence of a utility's actions as those actions impact upon the ratepayers. Indeed, a specific function of the rate-making power is to protect the utility's ratepayers [citations omitted]" *(supra,* at 617). The Court held, however, that the PSC exceeded its authority when the effect of its imputation of income to the utility was to compel the utility to expand its services outside the utility's territory *(supra,* at 619). The imputed royalty at issue here has no similar compulsory effect.

█ Having concluded that the PSC had the authority to impute the royalty to RTC, we turn to the question of whether the judgment of the PSC was exercised without any rational basis or without any reasonable support in the record *(see, Matter of Abrams v Public Serv. Commn., supra,* at 212), which we will consider in the context of the need for an adjustment and the use of the 2% royalty as the mechanism for making the adjustment. As to the need for the RVAM, the PSC concluded that certain intangible assets, such as a utility's name and reputation, have value and that utility ratepayers, who have a legitimate concern about the disposition of utility assets, are entitled to some adjustment in their rates to recognize the utility's free transfer of such intangible assets to its unregulated affiliates. There is a rational basis for the PSC's conclusion that a utility's name and reputation have value. It is undisputed that RTC would not allow a nonaffiliate to use its name and logo without compensation and RTC went to great lengths to associate its affiliates with the utility's name. Although ratepayers do not acquire an interest in utility assets *(see, Matter of General Motors Corp. v Public Serv. Commn.,* 95 AD2d 876, 877, *lv denied* 60 NY2d 557), the costs incurred by a utility to establish and maintain its name recognition and reputation are paid by the ratepayers.

In any event, the RVAM is not designed to compensate ratepayers for an interest in the intangible assets, but to protect the ratepayers when the utility allows its unregulated affiliates to use utility assets without compensation. The PSC is required to protect utility ratepayers by assessing the prudence of utility actions *(see, Matter of Crescent Estates Water Co. v Public Serv. Commn., supra,* at 617) and, in our view, the need in this case is similar to that in the case where a utility transfers an asset to an unregulated affiliate for less than fair market value *(see, Matter of Spring Val. Water Co. v Public Serv. Commn., supra; see also, Matter of General Tel. Co. v Lundy, supra* [where the need for PSC action arose out

of excessive charges by the utility's affiliate suppliers]). The claim that there was no need for the RVAM in the absence of direct evidence that RTC's affiliates benefited from the use of RTC's name or that the ratepayers were harmed by that use is unconvincing. RTC allowed its affiliates to use a valuable utility asset without compensation and, therefore, the PSC was justified in acting to protect the ratepayers from imprudent utility conduct *(cf., Matter of New York Tel. Co. v Public Serv. Commn.,* 190 AD2d 217).

We reach a similar conclusion regarding the positive benefits mechanism. There is evidence in the record to support the PSC's conclusion that despite the existence of cost allocation procedures, RTC's association with its affiliates results in increased costs to the utility that cannot be precisely and accurately quantified. As the PSC points out in its brief, there is record evidence of employee transfers, letters of credit, affiliate overcharges, cost accounting abuses and accounting inexactitudes. The PSC also rationally concluded that RTC, "like any other regulated utility * * * has abundant incentive to shift costs from its competitive to its monopoly operations". As with the RVAM, the PSC was justified in acting to protect the ratepayers from the increased costs. A prime function of the PSC "is to separate those costs which should be borne by ratepayers from those which are properly chargeable to shareholders" *(Rochester Gas & Elec. Corp. v Public Serv. Commn.,* 51 NY2d 823, 825, *appeal dismissed* 450 US 961; *accord, Matter of Consolidated Edison Co. v Public Serv. Commn.,* 66 NY2d 369, 372, *appeal dismissed* 475 US 1114). We conclude that the inability to quantify the exact amount of the costs improperly shifted to the ratepayers does not render the PSC's determination irrational. The need for the positive benefits mechanism is based upon the PSC's conclusion that despite existing accounting procedures, regulatory vigilance is not always availing, so that misallocations occur and some costs are incurred in ways that cannot be captured by conventional ratemaking.

Turning to the PSC's use of a 2% royalty as the means of accomplishing the adjustment intended by the RVAM and the positive benefits mechanism, we conclude that the PSC exercised its judgment in a technical area of public utility regulation that lies within the PSC's special competence and expertise *(see, Matter of City of New York v Public Serv. Commn.,* 17 AD2d 581, 586, *lv denied* 13 NY2d 594). Having determined that the record did not support a finding of no

value for the RVAM and positive benefits mechanism, the PSC sought a measurement that would reflect an adequate value without creating a penalty. The PSC noted that it has used similar formulae in the past to deal with intangible concerns, and there is evidence in the record to support the quantification theory adopted by the PSC. The PSC relied upon several prior settlements as some evidence that the 2% of the capitalization of RTC's unregulated operations was reasonable, not as precedents to establish the PSC's authority to impose a royalty.

We reject the claim that the rebuttable presumption established by the PSC for application in future rate cases involving other utilities is irrational. The purpose of the presumption is not to mandate the imposition of a royalty in all future rate cases or to modify the manner in which evidence will be weighed, but to put utilities and other parties on notice that the royalty issue must be addressed. As the PSC explained, "utilities may differ in their relationships to their subsidiaries * * * one can envision situations in which a different royalty payment, or none at all, might be warranted".

■ The constitutional claims raised by the parties are lacking in merit. Considering the factors relevant to the question of whether the PSC's actions resulted in an unconstitutional taking (see, Rochester Gas & Elec. Corp. v Public Serv. Commn., 71 NY2d 313, 324), we conclude that the economic impact of the PSC's action and its effect on investor expectations are negligible, and there has been no permanent appropriation of utility property. The alleged effect of the royalty imputation on interstate commerce is indirect and speculative, and in view of the legitimate local concern addressed by the royalty, there is no violation of the Commerce Clause (see, Rochester Gas & Elec. Corp. v Public Serv. Commn., 754 F2d 99, 105). The PSC's action does not involve a fundamental right and is rationally related to a legitimate State interest, so the equal protection claim is rejected. We also find no due process violation.

As a final matter, several utilities raise arguments concerning subsequent PSC orders relating to the applicability of the rebuttable presumption to holding companies, "upstream" affiliates and Public Service Law § 66-c subsidiaries. We conclude, however, that those arguments are not properly raised

in this proceeding which seeks review only of Opinions Nos. 93-11 and 93-11 (A).

MERCURE, J. P., WHITE, WEISS and PETERS, JJ., concur.

Adjudged that the determinations are confirmed, without costs, and petition dismissed.