■ In the Matter of HERITAGE HILLS SEWAGE WORKS CORPORATION, Respondent-Appellant, v TOWN BOARD OF THE

TOWN OF SOMERS et al., Appellants-Respondents. [666 NYS2d 648] —In a proceeding pursuant to CPLR article 78 to review a determination of the Town Board of the Town of Somers, dated August 10, 1995, which denied the petitioner's application for a sewer rate increase, the Town Board of the Town of Somers and the Town of Somers appeal from so much of an order of the Supreme Court, Westchester County (Scarpino, J.), dated June 26, 1996, as determined that no rational basis existed to support findings 2, 3, and 4 of the Town Board of the Town of Somers, and granted the petition to the extent of remitting the matter for recalculation and reconsideration, and the petitioner cross-appeals from so much of the same order as determined that there was a rational basis to support findings 1, 5, and 6 of the Town Board. The notices of appeal from the order are deemed to be applications for leave to appeal, and leave to appeal is granted.

Ordered that the order is affirmed insofar as appealed from; and it is further,

Ordered that the order is reversed insofar as cross-appealed from, and the matter is remitted to the Town Board of the Town of Somers for reconsideration of the petitioner's application in accordance herewith; and it is further,

Ordered that the respondent-appellant is awarded one bill of costs.

The petitioner Heritage Hills Sewage Works Corporation (hereinafter the Company) provides sewer services to over 2,000 residences within the Heritage Hills and Greenbriar condominium complexes in the Town of Somers. In 1974 the initial sewer rate for Heritage Hills residents was set under Transportation Corporations Act § 121 at $13.50 per unit per month. In a previous rate application proceeding involving these same parties, this Court held that the Company established that it had not recovered its capital costs through unit sales (*Matter of Heritage Hills Sewage Works Corp. v Town Bd.*, 189 AD2d 816). We further noted that the Town Board of the Town of Somers (hereinafter the Town Board) had allowed its decision to be influenced by the outrage of the Company's customers (*see, Matter of Heritage Hills Sewage Works Corp. v Town Bd., supra*). On remittitur the Company and the Town Board settled the matter by agreeing on a rate.

In May 1995 the Company again petitioned for a rate increase, which was met with fierce opposition by the Company's customers, primarily the Heritage Hills Home Owners Society (hereinafter the Society). Prior to the first public hearing on the application, the Society provided William C. Harding,

the Town Supervisor, with a copy of a report prepared by an attorney the Society had asked to review the application. In a memorandum to his fellow Board members Harding noted that the report was encouraging, and that the Society was "obviously pleased" with the attorney's work "to date". The report, which was prepared by the attorney following consultation with a rate consultant, which had concluded that no rate increase was warranted.

At the first public hearing on the application, that attorney appeared as a representative of the Society and argued against granting the increase. Following a brief adjournment the meeting reconvened, and the Town Board announced that it had retained the attorney who had appeared as the Society's representative, to act as its own "special counsel" on the "matter of the proposed rate increase". The attorney thereafter retained the same rate consultant he had used in preparing his earlier report for the Society concluding that no increase was warranted.

Following discovery, the attorney and the consultant submitted a report to the Town Board which also concluded that no increase was warranted. After additional hearings, the Town Board adopted all of its advisors' conclusions, and denied the application on the ground that the Company had recovered its capital costs through sale of the units, and had received payments from other developers, which decreased the Company's rate base. The Town further rejected the Company's claim that "complete system analysis" rather than the "rate year" analysis should be used to set the rate, and found that the rate the Company was charging provided it with a sufficient return on its investment.

The Town Board's determination was confirmed in part and rejected in part by the Supreme Court. The court found that this Court's decision in the prior rate proceeding estopped the Town from claiming that the Company had recovered its capital costs, and further that there was no rational basis for the Town's conclusions that the Company had received contributions in aid of construction from the owners of two nearby condominium developments. However, the court rejected as without merit the Company's claims that there was no rational basis for the Town Board's use of the rate year method of analysis, that the imputation of certain advances was incorrect, and that the rate of return was not reasonable. These appeals ensued.

We agree with the Supreme Court that this Court's determination in the prior proceeding that the Company had not

recovered its capital costs through unit sales estopped the Town Board from making a contrary determination in this proceeding. Collateral estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same" (*Ryan v New York Tel Co., 62 NY2d 494, 500; Matter of New York Site Dev. Corp. v New York State Dept. of Envtl. Conservation,* 217 AD2d 699). Because this issue was fully litigated by these same parties in the prior proceeding, the Town Board is precluded from raising it anew in this proceeding (*see, Matter of City of Yonkers v Yonkers Racing Corp.,* 171 AD2d 663, 664; *Chesterfield Homes v City of New York,* 92 AD2d 578).

We also agree that there was no rational basis for the Town Board's conclusion that the Company had received contributions in aid of construction from other developers in excess of contributions recognized by the Company in its application. By adopting that conclusion the Town Board substantially understated the rate base and, correspondingly, the minimum adequate rate to which the Company is entitled.

However, we agree with the Company that it was denied its right to an impartial review of its rate application by the Town Board. Contrary to the Town Board's claim, its actions under Transportation Corporations Law § 121 are "administrative, rather than legislative" (*see, International Paper Co. v Sterling Forest Pollution Control Corp.,* 105 AD2d 278, 282). A party appearing before an administrative tribunal is entitled to impartial and unprejudiced decision-making (*see, Schweiker v McClure,* 456 US 188, 195; *Matter of Washington County Cease v Persico,* 99 AD2d 321, 329, *affd* 64 NY2d 923; *Kendrick v Sullivan,* 784 F Supp 94, 102). By retaining the attorney who prepared a report and argued on behalf of the chief opponent to the increase at the first hearing as its own special counsel, the Town Board clearly indicated that the application was not going to be reviewed impartially. That the attorney then retained the same rate consultant used in preparing the earlier report, which had concluded that no increase was warranted, further establishes that the Town Board had predetermined that the increase would be denied.

The lack of impartiality was then manifested in the Town Board's determination to use the rate year analysis, despite the fact that the Public Service Commission had used the complete system analysis in reviewing a rate increase application by the Company's similarly-situated, sister water company,

in its expansion of the imputation of advances to include all other investments made by the Company, and in its conclusion that its calculations would afford the Company a reasonable rate of return, when, in fact, the Town Board's calculations would not appear to enable the Company to meet even the interest payments on its debt financing.

Therefore, the matter is remitted to the Town Board for reconsideration of the rate application. The rate base is to be determined without reduction of capital costs for contributions beyond those recognized by the Company. Upon determining the rate base, the Town Board is to utilize the complete system analysis, and recalculate the rate of return, keeping in mind that it may not deny the Company a "reasonable rate of return on its investment" (*see, Matter of Crescent Estates Water Co. v Public Serv. Commn.*, 77 NY2d 611, 620). Bracken, J. P., Thompson, Krausman and Luciano, JJ., concur.