OPINION OF THE COURT
Philip G. Minardo, J.
Plaintiffs motion for partial summary judgment (No. 4011-002) is granted; defendant’s cross motion to dismiss (No. 4570-003) is denied.
This matter arises out of a dispute concerning retroactive payments for sewer services allegedly rendered to plaintiff by defendant.
Plaintiff, Verizon New York Inc., owns and occupies certain commercial premises located at 1745 Richmond Avenue on Staten Island, which houses “a small staff of Verizon technicians and administrative employees [along with] complex telecommunications switches, wires, cables, computers and related network equipment” (see Nov. 3, 2015 aff of Verizon’s director of real estate operations, Nicholas Ramos). Waste water is generated by the two bathrooms located on the premises, as well as “back-up” coolant (i.e., water), which is occasionally required to reduce the heat generated by Verizon’s on-site equipment.
It appears undisputed that this particular area of Staten Island, including several of the surrounding blocks of residential and commercial premises, is “low-lying,”[1] as a result of which its waste water does not flow directly into the municipal *971 sewer system, but into a private system of collection pipes from which it is pumped into the City’s sewer system.
Defendant 2952 Victory Boulevard Pump Corp. describes itself as a “sewage pumping lift station” (see Dec. 16, 2015 aff of Francesco Arlia para 3), the function of which is to transfer sewage from the low-lying private sanitary sewer system servicing the area to the higher level of the municipality’s gravity fed sewer system.
In its May 1, 2015 complaint, Verizon alleges, inter alia, that it paid Victory the annual sum of $4,981.60 for calendar year 2014 (as it had for several prior years)[2] when, in December of that year, Victory billed Verizon for an additional $87,128.45 for unspecified charges that it allegedly incurred in that year (see plaintiff’s complaint para 19; Verizon’s exhibit D). It is further alleged that when Verizon questioned the bill, Victory threatened to terminate Verizon’s use of the pump station and, on February 10, 2015, informed Verizon that it would be charged a fee of $5,000 if it had to disconnect its service, and a further $20,000 to reconnect. In addition, it is claimed that Verizon was told that it would be required to deposit the sum of $1,000,000 into an escrow account pending the resolution of Victory’s “claim for additional fees dating back to 2003” (id. para 20). Subsequently, on or about February 11, 2015, Verizon purportedly paid Victory the additional sum of $213,556.84 in order to ensure continuous service.
In its cross motion to dismiss, Victory maintains that beginning in 2003, it billed Verizon based on the latter’s representation that the only sewage water generated by the building was from the two bathrooms (see aff of Francesco Arlia para 14). However, in 2014, when Arlia allegedly “noticed [for the first time] the high volume of water entering the pump station” from Verizon, he
“determined that . . . [the latter] was dumping more than just the sewage from its two bathrooms into the system . . . [, i.e., that it] was also draining the water generated by the cooling system for its equipment, . . . requiring [a greater] volume of water to be . . . pumped [to the level of the *972 municipal system] by the pump station . . . [As a result, Arlia calculated Victory’s] . . . losses . . . [over the years at] almost a million dollars” (id. para 15).
In defense of its claim for additional money, Victory claimed that it could charge Verizon at a “self-set rate,” inasmuch as it was a private sewer service and, therefore, not constrained by municipal regulations.
On May 5, 2015, this court signed Verizon’s order to show cause temporarily restraining Victory from “disconnecting or otherwise interfering” with Verizon’s use of the pump station. In the motion proper, Verizon seeks, inter alia, a judgment declaring that Victory is a “sewage-works corporation” within the meaning of section 115 (1) of article 10 of the Transportation Corporations Law, and therefore may not collect fees from Verizon unless and until such fees are reviewed and approved in compliance with that statute. In response, Victory has cross-moved for an order dismissing Verizon’s declaratory judgment cause of action. In its cross motion, Victory challenges Verizon’s assertion that Victory (1) is subject to and must comply with all of the statutory and regulatory requirements for “sewage works corporations” under article 10 of the Transportation Corporations Law; (2) is subject to and must comply with the statutory and regulatory requirements for “sewage systems” under article 5, title 2-A of the Public Authorities Law; and (3) is entitled to collect from Verizon only such fair and reasonable usage or other fees as have been calculated based on the rates or amounts duly approved by the Water Board for the City of New York pursuant to section 1045-g of the Public Authorities Law (id. para 28 [a]-[c]).
While Victory concedes that its pumping station “may” fit within the definition of a “sewage works corporation,” it maintains that article 10 of the Transportation Corporations Law was intended to regulate private sewer corporations located in the suburban and rural parts of New York State, rather than an entity like Victory, which operates as a component of the City’s municipal sewer system. In further support of its argument that its self-set rate is legal, Victory points to the “confusion and disorganization” it encountered on February 2, 2014[3] (see defendant’s mem of law para 6), when, rather than instituting a CPLR article 78 proceeding for rate *973 approval, it wrote to both the New York City Water Board and a New York City council member requesting information on how to go about changing its rates (see defendants’ exhibits C, D). As a result, Victory maintains that the rates it charged Verizon were “deemed approved” when the New York City Water Board failed to act upon these correspondences within 90 days, as provided in section 121 of the Transportation Corporations Law.[4]
Here, Victory admits that it performs “other necessary acts incidental [to]” providing a “sewer system” (see Transportation Corporations Law § 115 [1]; defendant’s mem of law para 7),[5] and that while no regulatory agency has ever told Victory that it must comply with article 10, “Victory . . . has recognized that it may be subject to the statute and has attempted to comply [there]with” (id.). In the opinion of this court, Victory’s concession renders it a “sewage-works company” within the meaning of section 115 (1) of the Transportation Corporations Law, which makes it fully subject to the rules and regulations set forth therein.
While the doctrine of res judicata is not applicable here, as the plaintiff in this case is different from the residential plaintiffs in Conigliaro v 2952 Victory Blvd. Pump Corp. (2004 NY Slip Op 51809[U]), this court is persuaded by the decision therein and the undeniable fact that the issue of whether Victory may charge a “self-set” rate was fully litigated and decided adversely to Victory in that action. Accordingly, whether or not Victory is collaterally estopped from re-litigating the issue here, this court agrees with Justice Maltese that “the defendant [i.e. Victory] cannot presently collect ongoing [pumping station] fees,” and that it has “no reasonable basis for setting the amount of fees [charged] at this time . . . [since the] [flees [col *974 lected] for [the] use of [a] sewer system [within the City] must be fair and reasonable and approved by the [New York City] Water Board [,]... subject to administrative and judicial review” (id. at *3-4; see Public Authorities Law § 1045-g [4]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222 [1974]; Matter of Westmoreland Apt. Corp. v New York City Water Bd., 294 AD2d 587 [2d Dept 2002]).
Moreover, while Justice Maltese did not find it necessary in Conigliaro to expressly state that Victory was a “sewage-works corporation” as defined in section 115 (1) of the Transportation Corporations Law, that finding was implicit in his citation to Public Authorities Law § 1045-g (4) authorizing the Water Board to “establish, fix, revise, charge and collect” service charges for the services furnished by, e.g., a sewerage system (see Matter of Heritage Hills Sewage Works Corp. v Town Bd. of Town of Somers, 245 AD2d 450, 451 [1997]). In any event, this court so finds in the instant case.
This court takes no position on the applicability, if any, of the statute of limitations as a bar to Victory’s monetary demands extending back to 2003. That is an issue for another day.
Accordingly, it is ordered, that Verizon’s motion for partial summary judgment is granted; and it is further adjudged and decreed that 2952 Victory Boulevard Pump Corp. is subject to and must comply with all of the requirements applicable to a “sewage-works corporation” under article 10 of the Transportation Corporations Law; and it is further ordered that 2952 Victory Boulevard Pump Corp.’s cross motion to dismiss Verizon’s action for a declaratory judgment is denied as academic.

. Francesco Arlia, defendant’s owner and sole shareholder, explains that since the subject location is in “a low-lying area,” Victory Boulevard Pump Corp.’s
“gravity fed sanitary sewer pipes are lower than the sanitary sewage system operated by the New York City Department of Environmental Protection as located in the bed of Victory Boulevard . . . [Accordingly, the] sewage collected . . . [locally] . . . flows into the pump station . . . [where it] is lifted and *971 pumped into the New York City sewer system” (see Dec. 16, 2015 aff of Francesco Arlia para 3).

. Victory Pump acquired the pumping station in 2003, when Francesco Arlia purchased the property on which the pumping station is located at a public auction.

. The court notes that Victory did not seek approval of its rates until 10 years after it took over the pump station, and nearly 10 years after it was *973 ordered to seek such approval by Hon. Joseph J. Maltese in Conigliaro v 2952 Victory Blvd. Pump Corp. (6 Misc 3d 1020[A], 2004 NY Slip Op 51809[U] [Sup Ct, Richmond County 2004]).

. Insofar as it appears, the proper way to obtain the approvals sought by Victory is to institute an article 78 proceeding (see Sagamor Sewer Corp. v Town Bd. of the Town of E. Fishkill, 2008 WL 8115471 [Sup Ct, Westchester County, Dec. 23, 2008, No. 5474/08]; Matter of Heritage Hills Sewage Works Corp. v Town Bd. of Town of Somers, 245 AD2d 450 [2d Dept 1997]).

. In pertinent part, Transportation Corporations Law § 115 (1) defines a “sewage-works corporation” as “a corporation . . . organized to provide a sewer system ... for the disposal of sewage, through an established system of pipe[s] . . . and other means of disposal, and which erects, operates, maintains and performs other necessary acts incidental thereto” (emphasis added).